HALL, Judge.
Plaintiff sued his employer and its compensation insurer for maximum benefits under the Workmen’s Compensation Act plus penalties and attorney’s fees. The Trial Court rendered judgment in plaintiff’s favor for compensation at the rate of $35.00 per week for the duration of his disability, not to exceed 300 weeks dating from November 14, 1962, the date of his accident, together with interest on all delinquent payments, subject to credit for compensation paid, and for medical expenses incurred, not to exceed the statutory maximum, subject to credit for medical expenses already paid, and for all costs including an expert fee of $50.00 for each expert. Plaintiff’s claim for penalties and attorney’s fees was denied. Defendants appealed. Plaintiff answered the appeal praying that the judgment be amended so as to award him 400 weeks compensation instead of 300 weeks and that in all other respects the judgment be affirmed.
Defendants admit that plaintiff was disabled and entitled to be paid compensation up to April 1, 1964 but deny any liability for compensation payments beyond that date, contending that as of that date plaintiff was fully recovered from his injuries and able to return to his regular work. Plaintiff contends that he is still disabled and entitled under the jurisprudence to a judgment for 400 weeks compensation.
The sole questions presented are whether plaintiff is entitled to any compensation beyond April 1, 1964, and, if so, whether under the jurisprudence as applied to this case the judgment should be for 300 or for 400 weeks compensation.
Plaintiff, a common laborer, sustained an accidental injury to his back on November 14, 1962 while working for his employer on a construction job in Destrahan. Immediately following the accident he was sent to Dr. Myles K. Gaupp, a general practitioner in Destrahan, for examination and treatment. Dr. Gaupp diagnosed the injury as a low back sprain and gave him physical therapy treatments until sometime in January 1963 when he developed what Dr. Gaupp thought were “signs referable to a ruptured intervertebral disk.” Dr. Gaupp thereupon referred plaintiff to Dr. Irving Redler, an orthopedist in New Orleans. Dr. Redler first saw plaintiff on January 28, 1963. His examination of plaintiff led him to the impression that plaintiff might be suffering from a rupture in one of the lower lumbar intervertebral disks and advised a continuation of therapy by Dr. Gaupp for another two weeks following which if his condition had not improved, Dr. Redler suggested hospitalization and fur *702 ther evaluation including myelographic examination.
Plaintiff’s condition not having improved, Dr. Redler hospitalized plaintiff from February 21 through March 29, 1963.
During his stay in the hospital plaintiff was put in traction and given bed-side physical therapy and improved to such an extent that a myelographic examination was not indicated. However plaintiff was still unable to return to work. After hospitalization Dr. Redler assumed complete charge of the case with Dr. Gaupp continuing to give plaintiff physiotherapy three times a week under Dr. Redler’s directions. These treatments were given through July 1963 at which time Dr. Gaupp’s connection with the case came to an end and he never saw plaintiff again. Dr. Gaupp’s last examination of plaintiff was in April 1963 at which time he found that plaintiff had completely lost all symptoms of a ruptured disk although he complained of low back pain and was unable to work at that time.
Following his discharge from the hospital plaintiff was seen and examined by Dr. Redler on April 5, April 15, April 29, May 13 and May 27, 1963. On May 27 Dr. Red-ler felt that he could discharge plaintiff at the end of two weeks if his findings remained the same, and told plaintiff to continue the physical therapy treatments and return in two weeks. Through a misunderstanding or for some other unexplained reason plaintiff did not return until August 2, 1963.
Dr. Redler examined plaintiff on August 2, 1963, December 19, 1963 and April 1, 1964. Fie testified that he had found a steady improvement in plaintiff’s condition up to his examination of May 27th but after his examination on August 2 he felt that plaintiff had “retrogressed somewhat” and stated that while plaintiff was relatively asymptomatic at this time it was his opinion if plaintiff resumed his former type of work he would develop acute disabling symptoms. On August 2, 1963 Dr. Redler recommended that a myelogram be performed and if it confirmed his clinical impression of injury to one of the lower lumbar intervertebral disks that a laminectomy be performed. Dr. Redler examined plaintiff on December 19, 1963 and found his condition unchanged since August 2.
However Dr. Redler re-examined plaintiff on April 1, 1964 at which time he found that plaintiff had improved and had “recovered to the point where he can resume his former type of work at this time.”
The reason given by the Trial Judge for awarding plaintiff compensation for temporary total disability, not to exceed 300 weeks, was stated in the judgment rendered by him as follows:
“The testimony of the Doctors indicated that plaintiff’s disability still existed but should respond to treatment; hence, this Court must hold plaintiff to be temporarily totally disabled: Cloud v. National Surety Corp., La.App., 138 So.2d 630.”
The Trial Judge erred in this respect. There is no medical testimony in the record which supports such a finding. Plaintiff was examined and treated by only two doctors viz. Dr. Gaupp and Dr. Redler. Dr. Gaupp did not see plaintiff after July 1963 and knew nothing of his condition thereafter. Dr. Redler’s is the only medical testimony concerning plaintiff’s condition in April 1964, and it was his opinion that plaintiff had recovered and could return to his normal work as of April 1,1964.
At the time of the trial plaintiff was still complaining of an aching back. He walked with a limp and said he had a funny feeling in his whole leg, from ankle to hip. He said he could not even lift a pan of water. Dr. Redler testified that at no time during the long period of his examination and treatment did plaintiff exhibit a limp and further testified that there was no anatomical basis for the “stocking type” hypesthesia of the leg. He further testified that no atro *703 phy was found from plaintiff’s alleged inactivity.
Since there is no conflict in the medical testimony, lay testimony is not to be considered in the matter of disability. See Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314; Lee v. Royal Indemnity Company, 149 So.2d 606; Butler v. American Insurance Company, La.App., 138 So.2d 862; Powell v. Liberty Mutual Insurance Company, La.App., 80 So.2d 902.
Plaintiff contends that Dr. Redler changed his opinion on a number of occasions during his treatment of plaintiff and that his opinion that plaintiff could return to work on April 1, 1964 “is incredible and not worthy of belief.” Plaintiff would have us hold that Dr. Redler is either incompetent or dishonest, neither of which propositions is worthy of our consideration.
We are of the opinion that plaintiff is entitled to compensation from the date of his injury up to but not beyond April 1, 1964.
Defendants paid compensation to plaintiff through July 8, 1963. Thereafter payments were suspended for a while because of plaintiff’s failure to return to Dr. Redler as directed. However, following the suspension, payments were tendered to plaintiff through April 6, 1964 but were refused. Since payments were either made or tendered no interest is due on the judgment.
For the foregoing reasons the judgment appealed from is amended so as to reduce the period of the award from 300 weeks to the period beginning November 14, 1962 and ending April 1, 1964, and further amended so as to disallow interest on all compensation payments made or tendered. As thus amended and in all other respects the judgment appealed from is affirmed, plaintiff to bear all costs of this appeal.
Amended and affirmed.