BOLIN, Judge.
On January 11, 1966, plaintiff injured her back while employed as a saleslady by G & H Drug Company, Inc. On March 10, 1966, Dr. Ray E. King, an orthopedic surgeon of Shreveport, Louisiana, operated on plaintiff and in due time she returned to her former employment. Plaintiff sues her employer and its insurer for compensation for total and permanent disability, together with penalties and attorney’s fees, under the Louisiana Workman’s Compensation Act. For reasons orally assigned the lower court rendered judgment in plaintiff’s favor and against defendants in solido for total and permanent disability benefits, less the amount previously paid, but rejected her demands for penalties and attorney’s fees. Defendants appeal and plaintiff answers re-urging her entitlement to penalties and attorney’s fees.
Defendants concede plaintiff’s employment was of such a nature as to afford her coverage under the Workman’s Compensation Act; that she was accidentally injured on the job; that Dr. King performed a laminectomy and removed two interverte-bral discs and that plaintiff is entitled to a judgment for some benefits under the Workman’s Compensation Act. Defendants contend the back operation left plaintiff with only a 15% residual disability of her body as a whole and that she is entitled to an award of 100 weeks compensation under La.R.S. 23:1221(4) (p) rather than for total and permanent disability.
We shall briefly set forth the facts which are essentially undisputed. Soon after plaintiff was injured she consulted her family physician, Dr. H. H. Vaughn, who gave her conservative treatment. She was thereafter referred by Dr. Vaughn to Dr. King, who performed surgery on her back on March 10, 1966. On April 18, 1966, Dr. King recommended plaintiff return to work, which she did on May 3, 1966. On May 16, 1966, Dr. King discharged plaintiff from treatment and evaluated her disability as being 15% of the body as a whole.
*880 Plaintiff was examined on August 8th and 15th, 1966, by Dr. W. W. Fox, an orthopedist of Shreveport, Louisiana. Dr. Fox was of the opinion plaintiff had reached maximum recovery from her back operation and recommended she resume her employment as a saleslady. He stated plaintiff complained to him that she experienced considerable pain while stooping and bending, which actions were required of her in her employment by the drug company.
Several lay witnesses testified for plaintiff, some of whom had observed plaintiff after she returned to her employment following the operation. They said she discontinued performing some of her former duties, one testifying that while she and plaintiff were taking inventory plaintiff merely did the writing while the witness was required to list and move the various articles of merchandise.
Appellant cites a number of cases in support of the principle of law that in a workman’s compensation case the plaintiff has the burden of proving his claim by a preponderance of the evidence as in any other type case, and that speculation, conjecture and unsupported probability are not sufficient to support a judgment for workman’s compensation benefits. This principle is so well-established as to require no citation of authority.
Appellant takes the position the lay testimony in this case should not be considered as there was no material conflict in the medical evidence and cites in support thereof Guillory v. Southern Farm Bureau Casualty Company, 237 La. 374, 111 So.2d 314 (1959); Diggs v. Weitz Company, 176 So.2d 700 (La.App. 4 Cir. 1965); and Carpenter v. Employers Mutual Liability Insurance Company of Wisconsin, 178 So.2d 486 (La.App. 1 Cir. 1965). We do not intend to disturb the rule enunciated in the cited cases. The lay testimony considered by this court was not in conflict with the medical evidence. However, we do think it proper to take into consideration the testimony of the lay witnesses who were merely explaining day-to-day movements and actions of plaintiff while performing her duties after her return to work.
Whether plaintiff has been rendered totally and permanently disabled by the accident is primarily a factual question since the law does not require an employee to work in pain. However, in order for the pain to be disabling within contemplation of the Workman’s Compensation Act it must be substantial enough to hinder the worker’s fulfillment of his duties or, where the pain is not so intense as to hinder the worker from carrying out the functions of his job, it must be shown that the continued performance of the work would be injurious to the employee’s health. Milligan v. Fidelity and Casualty Company of New York, 200 So.2d 104 (La.App. 1 Cir. 1967) and cases cited therein. Even though Dr. King concluded plaintiff had only a 15% disability of the body as a whole he, as well as the other two doctors, testified plaintiff complained of pain upon bending, stooping or working from a ladder.
Appellant points out that plaintiff was, at the time of the trial, performing substantially the same duties as she was when injured. The record shows that after plaintiff was released by Dr. King she returned to work for her former employer and worked there until she found employment at another drug company around May 1, 1967. She offered as explanation for changing employment the fact that she would not be required at the latter drug company to handle any of the merchandise and her duties were confined exclusively to the cosmetics department.
The medical evidence, when studied in connection with that of the employee and the nature of the duties she was performing at the tóme of her injury, leads us to the conclusion she is totally and permanently disabled to perform her former duties without experiencing substantial pain, which entitles her to a judgment for total and permanent disability benefits under the Louisiana Workman’s Compensation Act.
*881 We now give consideration to the question of penalties and attorney’s fees. Upon Dr. King’s recommendation plaintiff returned to work on May 3, 1966, on a part-time basis. On or about July 11, 1966, compensation payments were reduced from $35 to $10 per week based on Dr. King’s report that plaintiff had only a 15% permanent disability of the body as a whole. Drafts for these compensation payments of $10 per week were issued every two weeks by the insurer and mailed to Mr. R. F. Gates, Secretary-Treasurer of G & H Drug Company, Inc. Mr. Gates followed a practice of allowing two or three drafts to accumulate before delivering them to plaintiff at the drug company. Plaintiff admitted she made no objection to this procedure and never requested the drug company or the insurer to mail the drafts to her home address. This method of payment continued until the present suit was filed about one year after the reduction in payments. Since plaintiff had secured another job Gates had accumulated five drafts which were undelivered at the time the suit was filed. Plaintiff’s attorney refused to accept the back payments of $10 each, contending Mrs. Durham was entitled to weekly payments of $35 each. The accumulated drafts were therefore deposited in the registry of the court.
We find no merit in appellee’s claim for penalties and attorney’s fees. We do not consider defendants acted arbitrarily or capriciously in reducing the payments from $35 to $10 per week, which reduction was based upon the report received from Dr. King. We likewise find nothing unreasonable in the actions of Mr. Gates in accumulating the compensation payments for the reason that plaintiff apparently acquiesced in this manner of payment and had never registered any complaint.
For the reasons assigned the judgment appealed from is affirmed at appellants’ cost.