337 So.2d 900 (1976)
Sam COLE, Jr., Plaintiff and Appellee,
v.
SEARS, ROEBUCK & COMPANY, Defendant and Appellant.
No. 5571.
Court of Appeal of Louisiana, Third Circuit.
September 29, 1976.
Watson, Murchison, Crews & Arthur by William P. Crews, Jr., and Ronald E. Corkern, Jr., Natchitoches, for defendant and appellant.
G. F. Thomas, Jr., Natchitoches, for plaintiff and appellee.
Before HOOD, CULPEPPER, MILLER, DOMENGEAUX and GUIDRY, JJ.
CULPEPPER, Judge.
Plaintiff seeks workmen's compensation benefits for total and permanent disability resulting from an accidental injury to his back on July 22, 1975 while working for the defendant, Sears, Roebuck & Company. The district judge awarded benefits plus penalties and attorney's fees. The defendant appealed.
The substantial issues are: (1) Did the plaintiff sustain a job-related accidental injury on July 22, 1975? (2) If so, is plaintiff entitled to penalties and attorney's fees?
The record shows that plaintiff is 59 years of age and has been employed by the Sears, Roebuck & Company catalogue store in Natchitoches since 1956. He worked in the freight department, sorting out all incoming freight and occasionally helping customers load their purchases. The items of freight included heavy appliances, such as washing machines, stoves, refrigerators, etc.
*901 THE ACCIDENT
The testimony is in conflict as to whether an accident occurred on July 22, 1975. Plaintiff says that at about 9:30 a.m. he was moving a heavily loaded hand truck, and the load shifted forward. He says the truck fell forward and he went with it. The front of his body fell on the truck, and he felt like he had "pulled something aloose" in his back.
Plaintiff testified that he did not complain immediately to anyone about his back injury, thinking that it would "go away". However, shortly before noon that morning he went to the office of the manager and reported to her that he had hurt his back and had to go to the doctor. He says that at the same time he complained to the manager that his job was too heavy for one man and he wanted another employee to be assigned to help him.
Plaintiff testified he went home at noon and took a hot bath and told his wife about the injury. The next day, July 23, 1975, he went to see Dr. R. R. Sills, a general practitioner in Natchitoches. Dr. Sills had treated plaintiff for previous back complaints in 1972 and in February of 1975. Plaintiff says he told Dr. Sills his back hurt, but he could not remember whether he told the doctor on this occasion that he had injured his back at work on the previous day.
Dr. Sills testified that in view of plaintiff's previous complaints of back pain, and the fact that he had a complaint of pain running down into his legs, the doctor suspected a herniated disc. Dr. Sills referred plaintiff to Dr. Richard Ashby, a neurosurgeon in Shreveport.
It is particularly noteworthy that Dr. Sills testified his notes of his July 23, 1975 examination showed no mention by plaintiff of any accidental injury at work on the previous day. Dr. Sills testified further that if there was a ruptured disc, it could have occurred a year or two previously.
On or about July 29, 1975, plaintiff was seen by Dr. Ashby in Shreveport. This physician hospitalized plaintiff for about two weeks for tests and examination. His final diagnosis was a ruptured disc at L4L5. He recommended surgery, which plaintiff refused. There is no question that plaintiff is presently disabled from returning to his former employment.
Plaintiff's wife corroborated his testimony that he came home from work at noon on July 22, 1975 and told her he had hurt his back at work that morning.
Joseph Metoyer, an employee at Sears, corroborated plaintiff's testimony to the extent that he said he saw plaintiff leaving the store on July 22 and that he appeared to be "walking funny". Metoyer also testified that plaintiff was "mad" when he left.
The defense witnesses testified as follows regarding the accident: Mrs. Sambrough, the manager of the store, stated that on the morning of July 22, 1975, she was in the freight room and plaintiff asked to see her. Shortly thereafter, plaintiff came to her office. She testified plaintiff complained that the work was too heavy for him to perform alone and that he needed help. Mrs. Sambrough says that on two previous occasions plaintiff had complained that Joe Maricelli, who worked in the freight room with plaintiff, was not doing his share of the work. It was Mrs. Sambrough's testimony that on July 22 plaintiff was mad because Maricelli would not help him and he became angered and said he was going to quit. She says she told plaintiff she would check into his eligibility for retirement and let him know.
Mrs. Sambrough testified positively that on July 22 plaintiff made no mention whatever of having hurt his back that morning and that he never did file an accident report. Actually, plaintiff does not contend that he filed an accident report. He contends that he told the manager about his injury on July 22.
Joe Maricelli, who works with plaintiff in the freight room, testified that he was working with plaintiff for 30 or 40 minutes before plaintiff left and that he observed no accident or injury or anything unusual. He says plaintiff got mad because Maricelli was not helping him and that he went and complained to the manager.
*902 As stated above, Dr. Sills testified that when he examined plaintiff on July 23, the day after the alleged accident, plaintiff made no mention of any recent back injury. In a letter which Dr. Sills mailed to Sears of date, July 29, 1975, he states that he saw Sam Cole on July 23, 1975 "for old back injury which has reoccurred". In his testimony, Dr. Sills stated that plaintiff told him that his back was "still hurting." From this, Dr. Sills received the impression that plaintiff was complaining of the old back injury for which he had seen plaintiff in 1972 and in February of 1975.
Three or four other employees of Sears testified they saw plaintiff at the store on July 22, 1975 and they noticed nothing abnormal about the way he walked or his behavior.
Dr. Archie Breazeale, Jr., also a general practitioner of Natchitoches, testified that he had also seen plaintiff for a strained back several times beginning in 1965. The last time this physician saw plaintiff for his back condition was in 1974.
From the above, it is seen that the testimony was in conflict as to the occurrence of the alleged accident on July 22, 1975. However, we conclude that under the rule of Canter v. Koehring Company, La., 283 So.2d 716 (1973) there is a sufficient evidentiary basis to support the finding of the trial judge, based on his evaluation of credibility, that plaintiff did sustain a job-related accident on July 22, 1975.
PENALTIES AND ATTORNEY'S FEES
The next issue is whether the trial judge erred in awarding plaintiff penalties and attorney's fees. LSA-R.S. 23:1201.2 provides that where an employer fails to pay workmen's compensation benefits within sixty days after demand, the employer shall be liable for penalties and attorney's fees where such failure to pay is found to be "arbitrary, capricious, or without probable cause. ..." Jurisprudence has construed this statute to mean that where there is a bona fide factual dispute as to whether the employee's disability was work-related, the employer has "probable cause" to refuse to pay workmen's compensation benefits. Wright v. Red Ball Motor Freight, In., La.App., 315 So.2d 344 (1st Cir. 1975). Also applicable here is the rule that the statute, being penal in nature, must be strictly construed. Gros v. LeBlanc, La.App., 304 So.2d 49 (1st Cir. 1974).
Applying these rules to the present case, we find there was a serious factual issue as to whether plaintiff's disability was caused by a job-related accident on July 22, 1975. Plaintiff testified that he hurt his back about 9:30 a.m. and that he reported the accident to the manager, Mrs. Sambrough, shortly before noon. Mrs. Sambrough denied that plaintiff had reported any accident to her on July 22. Instead, she said plaintiff complained that Joe Maricelli would not help him in the freight room, and that he said he was going to quit work and was not coming back. Plaintiff admits he made no formal accident report. He also admits that he does not remember whether he told Dr. Sills on the day after the accident, that he had hurt his back on the job the day before. Of course, Dr. Sills testified his notes showed that on July 23, plaintiff made no mention of any recent back injury.
The testimony of Joe Maricelli, who worked with plaintiff in the freight room, seriously contradicts plaintiff's testimony. Maricelli says he worked with plaintiff for 30 or 40 minutes immediately before plaintiff left, and that he noticed nothing unusual or abnormal about plaintiff that would indicate he had suffered an injury or had an accident. Three or four other employees stated they had seen plaintiff at the store that morning and he appeared to be normal.
The testimony of Mr. Tom Shaw, assistant personnel manager in the Dallas office of Sears, shows that Sears carries its own workmen's compensation insurance. An investigation was made by Sears in which it considered the statements by Mrs. Sambrough and Joe Maricelli, as well as the statements of other store employees. Mr. Shaw also testified he considered the letter *903 written by Dr. Sills of date, July 29, 1975, in which Dr. Sills makes no mention of any work-related accident on July 22. All of this information was referred to the legal department of Sears, and a determination, was made to refuse workmen's compensation benefits on the grounds that there was no job-related accident on July 22, 1975.
Plaintiff contends defendant should have known from Dr. Ashby's report that plaintiff suffered an injury at work on July 22, 1975. Dr. Ashby did not testify, but in his letter report to Dr. Sills, he states that plaintiff had a history of an injury on the job about two weeks before. Plaintiff testified he told Dr. Ashby he hurt his back at work on July 22, 1975. This explains Dr. Ashby giving this history in his report. However, defendant was not bound by this mere statement of history which the doctor had obviously received from plaintiff himself.
We conclude there is a serious factual issue as to whether a job-related accident occurred on July 22 and that Sears was entitled to assert this as a bona fide defense for court determination. Accordingly, the defendant is not liable for penalties or attorney's fees.
THE DECREE
For the reasons assigned, the judgment appealed is amended so as to delete therefrom the award to plaintiff of penalties and attorney's fees. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED, AS AMENDED.
MILLER, J., dissents and assigns written reasons.
MILLER, Judge (concurring in part; in part dissenting).
The trial court award of total and permanent workmen's compensation benefits to plaintiff Sam Cole, Jr. is properly affirmed. I respectfully dissent to the reversal of the trial court award of penalties and attorney fees.
I firmly agree that employers are not arbitrary when they, in good faith, undertake to defend a workmen's compensation claim on the ground that the workman failed to prove the occurrence of an accident. My position is that defendant has failed to establish manifest error in the trial court determination that Sears' defense in this case was not undertaken in good faith.
Plaintiff Cole established that Sears followed a pattern of conduct to handle his workmen's compensation claims as health and accident insurance disability benefits claims. Following the accident which is the subject of this compensation award, Sears immediately commenced insurance disability benefits payable to Colebenefits which amounted to full pay for ten weeks, then half pay for an additional ten weeks. Immediately thereafter, Cole was processed for early retirement.
It must be remembered that this 59 year old employee had been employed by Sears' Natchitoches catalog store for nineteen years. On five separate occasions in the past ten years Cole injured his back in job related accidents. So far as this record indicates, every one of these on the job accidents resulted in insurance disability benefits and not one was handled as a workmen's compensation claim.
Cole's failure to file an accident report is not as significant as Sears contends. Only one accident report had been filed concerning Cole's five previous on the job back injuries, and that one report related to insurance disability benefits. It had been made out by a Sears employee and was signed by Cole eight weeks after that accident.
Considering Sears pattern of conduct (in paying health and accident insurance disability benefits instead of workmen's compensation benefits for on the job accidents) and the extreme difficulty Cole demonstrated in articulating his problems, I do not find it significant that Cole failed to file an accident report.
These seem to be adequate reasons for refusing to find manifest error in the award of penalties. Furthermore the trial judge *904 was impressed by the fact that Sears failed to promptly pay Cole's extensive medical bills. Sears acknowledged they did not promptly pay Cole's medical bills, even though they were obligated to pay a substantial part of these bills under an employee's insurance plan.
The trial court made a factual determination based on credibility when he found Sears' defense of this claim to be arbitrary. When evidence is before the trier of fact which, upon a reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the appellate court should not disturb this finding absent manifest error, even though the appellate court may believe its own evaluations and inferences are as reasonable. Constance v. Smith, 326 So.2d 905 at 906 (La.App. 3 Cir. 1976).
A workmen's compensation claimant is entitled to penalties and attorney fees when the employer is arbitrary, capricious or without probable cause in refusing compensation. LSA-R.S. 23:1201.2; Gauthier v. Employers National Insurance Co., 316 So.2d 769 (La.App. 1 Cir. 1975).
Penalties were awarded because Sears was unable to satisfactorily explain why they ignored 1) the treating neurosurgeon's August 18, 1975 report that Cole was injured on the job, and 2) Cole's attorney's reports of the accident. All of these were received more than sixty days before suit was filed.
Failing to find manifest error in the trial court determination that penalties and attorney fees are due, I respectfully dissent to that reversal.