369 So.2d 196 (1979)
Elmo BREAUX, Plaintiff and Appellee,
v.
MARINE ELECTRIC AND RELIANCE INSURANCE COMPANY, Defendants and Appellants.
No. 6827.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1979.
Rehearing Denied April 19, 1979.
Writ Refused June 11, 1979.
*197 Lewis & Lewis, James T. Guglielmo, Opelousas, for defendants and appellants.
Shelton & Legendre, Thomas Robert Shelton, Lafayette, for plaintiff and appellee.
Before CULPEPPER, FORET and DOUCET, JJ.
CULPEPPER, Judge.
This is a suit for workmen's compensation benefits. The plaintiff, Elmo Breaux, contends he is totally and permanently disabled as the result of back injuries suffered on September 17, 1976 while employed by the defendant, Marine Electric. The trial judge found plaintiff totally and permanently disabled and awarded $77.60 per week for the period of disability beginning September 17, 1976. Additionally, the trial court awarded penalties and attorney's fees. The defendants, Marine Electric and its insurer, Reliance Insurance Company, appealed.
The issues on appeal are: (1) Was there an accident on September 17, 1976? (2) If such an accident did occur, what is the extent of the plaintiff's disability? (3) Were the defendants arbitrary and capricious in their termination of workmen's compensation benefits as of April 22, 1977, subjecting them to penalties and attorney's fees? (4) Were the defendants arbitrary and capricious in their failure to resume compensation benefits upon the receipt of medical bills, subjecting them to penalties and attorney's fees? (5) If the defendants were arbitrary and capricious, was the award of $7,500 for attorney's fees so excessive as to require a reduction by the appellate court?
THE ACCIDENT
Plaintiff alleges that on September 17, 1976 he injured his back while attempting to lift a large air conditioner compressor. His fellow worker and brother-in-law corroborated the plaintiff's claim that while lifting, he felt something pop in his back. He immediately quit working allowing the other workers to finish the job. Because it was lunchtime and the plaintiff was not working at the office location, he went home for lunch. He did not return to work that afternoon because of the pain. After lunch, the brother-in-law reported the accident. There is a record of the accident in the company's files, but it indicates that the accident occurred in the office warehouse while the plaintiff was moving an appliance. The plaintiff contends that his supervisor put this in the report despite his protestations that the location of the accident was not correct.
The trial judge found that there was in fact an accident on September 17, 1976 which caused the plaintiff's injuries. In view of the testimony outlined above, we hold that the trial court's finding of an injury on September 17, 1976 is not clearly wrong under the standard of appellate review of fact enunciated by the Supreme Court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
EXTENT OF DISABILITY
The next issue is the extent of plaintiff's disability. After the accident on September 17, 1976, plaintiff sought medical help on September 20, 1976 from Dr. Philip Purpera, a general practitioner. This doctor found lumbar spasm and referred plaintiff to an orthopedic surgeon, Dr. Blanda, who *198 confirmed Purpera's diagnosis of lumbar spasms and treated the patient conservatively for several months. In January of 1977, Dr. Blanda ordered a myelogram, which was negative. However, Dr. Blanda did note that the plaintiff's anuli meningeal index was enlarged, indicating a possible disc problem. Dr. Blanda then referred the plaintiff to Dr. Robert Martinez, a neurologist, to determine whether the patient suffered a neurological deficit. Dr. Martinez examined the plaintiff on January 31, 1977 and found no neurological abnormalities.
In a report to Reliance dated February 8, 1977, Dr. Blanda stated:
"PATIENT: BREAUX, ELMO DATE: 2/8/77
"FOLLOW UP VISIT: He still complains of some back pain. Neurological report from Dr. Martinez says that he does not feel that this man has a herniated disc. I think our investigative measures are complete. I have released him to return to work at light duty. I feel that he has only a chronic lumbar strain and should be able to return to work." (Emphasis added)
In a report to Reliance dated April 6, 1977, Dr. Blanda stated:
"PATIENT: BREAUX, ELMO DATE: 4/6/77
"The patient still complains of back pain. His exam again today was normal. It is my opinion that this man should return to work although he still complains of the pain in the lumbar area. All evaluations from neurology neurologic consultations have been normal yet he feels that his back is still working (sic) and he cannot return to his normal activities."
On receipt of Dr. Blanda's April 6, 1977 report that plaintiff could return to his normal duties, Reliance terminated compensation payments as of April 22, 1977.
After the termination of compensation benefits, plaintiff did not return to work. He continued to see Dr. Blanda and to complain of pain. Suit was filed on June 21, 1977. When Dr. Blanda examined the plaintiff on June 27, 1977, the pain running down the right leg had reoccurred. On July 11, 1977, Dr. Blanda performed a discogram, a procedure whereby a dye is injected directly into the disc to show whether there is any abnormality. This test was positive for a ruptured disc at L5-S1. A surgical laminectomy was performed on July 12, 1977. Plaintiff was discharged from the hospital on July 19, 1977.
Insofar as the record shows, Dr. Blanda last examined the plaintiff on August 29, 1977. He testified that on this examination plaintiff was recovering normally from surgery, but that he could not perform heavy labor. The doctor was of the opinion that it was not long enough after surgery to give a final rating of disability, but he stated that if plaintiff continued to progress as well as he had, he should only have about a 5% residual disability of the body as a whole. The doctor could express no opinion as to whether plaintiff would be able to return to the heavy labor involved in the work he was performing at the time of the accident, but he stated that he thought plaintiff would certainly be able to return to gainful employment. The doctor stated that, as a general rule, a final estimate of residual disability could not be made until six months after such disc surgery.
Under these facts we will first address the question of the extent of plaintiff's disability. Since the accident occurred on September 17, 1976, the 1975 amendments to the Workmen's Compensation Act are applicable. LSA-R.S. 23:1221(1) defines temporary total disability as follows:
"(1) For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
LSA-R.S. 23:1221(2) defining "permanent total disability" is exactly the same as *199 the definition of "temporary total disability" except for the word "permanent." As a practical matter, it makes little difference whether the award is for temporary total disability or for permanent total disability since the weekly payments are the same, the duration of payments is the same, and under LSA-R.S. 23:1331 the judgment is subject to modification after six months on the application of either party to show that the disability has subsequently either diminished or increased.
LSA-R.S. 23:1221(3) defines "partial disability" as the inability to perform the duties in which the employee was customarily engaged when injured, and the rate of compensation is two-thirds of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the employee actually earns thereafter. This subdivision has no application here.
In the present case, the district judge found plaintiff is totally and permanently disabled and awarded benefits accordingly. Although, as stated above, it makes little difference as a practical matter whether the award is for permanent total disability or temporary total disability, we find that under the expert medical evidence in the present case the award clearly should be for temporary total disability. Dr. Blanda, the treating physician and a Board Certified Orthopedic Surgeon, expressed the opinion that as of the date of his deposition, which was about five months before trial, plaintiff was totally disabled. However, this physician was of the opinion that after recovery from surgery plaintiff's residual disability would be only about 5% of the body as a whole, and, although it was too soon after surgery to express an opinion as to whether plaintiff could return to the hard manual labor which he was performing at the time of the injury, that he would be able to return to gainful employment. There is no expert medical evidence to contradict this opinion by Dr. Blanda. Accordingly, we will amend the judgment appealed to change the finding of disability to temporary total disability.
PENALTIES AND ATTORNEY'S FEES
The next issue is penalties and attorney's fees. LSA-R.S. 23:1201.2, which is applicable to employers under the Workmen's Compensation Act, and LSA-R.S. 22:658, which is applicable to workmen's compensation insurers, contain substantially similar provisions that if payments are not commenced "within sixty days after receipt of written notice", penalties and attorney's fees will be assessed "when such failure is found to be arbitrary, capricious, or without probable cause." The discontinuance of payments is also subject to this same test.
The district judge did not find defendants arbitrary, capricious or without probable cause in discontinuing payments in April of 1977 after receiving Dr. Blanda's April 6, 1977 report that plaintiff could return to his normal activities. This is clearly correct. Defendants had a right to rely on this report from the treating physician who is highly qualified.
The only serious issue regarding penalties and attorney's fees is whether Reliance Insurance was arbitrary, capricious or without probable cause in not resuming payments after the July 12, 1977 surgery until September 25, 1977.
In his written reasons, the district judge states:
"The problem arises in this particular instance as the notifications were sent to Dwight Andrus Agency relative to the medical bills of Mr. Breaux and in August of 1977, Dwight Andrus Insurance Agency was in receipt of a bill from Our Lady of Lourdes Hospital covering the hospitalization of Mr. Breaux for the surgery performed on the 14th of July, 1977. This bill remained unpaid and a second bill was sent the Dwight Andrus Insurance Agency seeking collection of this amount. No inquiry was made by Reliance Insurance Agency or Dwight Andrus Insurance Agency after the receipt of the hospital bills, which hospital bills were forwarded by the Dwight Andrus Agency to Reliance Insurance Company.

*200 "In view of the manner in which workmen's compensation claims were apparently handled in this particular instance, that is through the Dwight Andrus Agency and in turn forwarded to Reliance Insurance Company, defendants should have known of the continuing disability of the plaintiff herein, and their failure to make inquiry as to the condition of Mr. Breaux and make a determination of the facts of the surgery were such as to render their failure to pay compensation from the date of the termination to present arbitrary and capricious and accordingly, renders them liable for penalties and attorney fees."
Mitzi Melancon, the claims supervisor for the office of Reliance Insurance Company in Metairie, Louisiana, testified that Dwight Andrus Insurance Agency had written the policy in question, and, as a matter of courtesy to the insured, had received medical bills and forwarded them to Reliance, but that Dwight Andrus had no authority to act on the bills and was not the agent of Reliance in this respect. Mrs. Melancon was first questioned about a request from Our Lady of Lourdes Hospital for payment of services rendered to plaintiff on June 7, 1977 in the amount of $83.10. This notice shows on its face that it was received by Dwight Andrus and forwarded to the Metairie claims office of Reliance, where it was stamped "Pull August 22, 1977." Mrs. Melancon testified that she did not know whether Reliance was liable for these services and she did not recall taking any action at the time.
Mrs. Malancon was next questioned about the bill from the Lafayette Bone & Joint Clinic for services rendered June 6 through July 27, 1977 in the sum of $30. Mrs. Melancon testified that she assumed this was for follow-up office visits to the doctor after plaintiff was discharged, and so she paid it on July 7, 1977. Of course, this was before the surgical laminectomy was performed by Dr. Blanda on July 12, 1977.
Ms. Patricia Guidry, a claims secretary for Dwight Andrus Insurance Agency, identified a collection notice received from Our Lady of Lourdes Hospital on August 18, 1977 and mailed to Reliance on August 19, 1977. This collection notice is for services rendered to plaintiff on June 7, 1977 in the sum of $83.10, and is a copy of the same notice about which Mrs. Melancon testified, as discussed above. Ms. Guidry also testified regarding another bill from Our Lady of Lourdes Hospital received by Dwight Andrus and mailed to Reliance on September 6, 1977 for services rendered to plaintiff ending July 19, 1977 in the sum of $1,675.
Mrs. Melancon was called back to the stand to explain what action her office took on receiving these bills and collection notices. She testified that after receiving Dr. Blanda's April 6, 1977 report that plaintiff could return to work at his normal duties, workmen's compensation payments were terminated as of April 22, 1977. Mrs. Melancon said the first knowledge Reliance had of plaintiff's subsequent surgery on July 12, 1977 was when she received on August 3, 1977 the hospital bills from Our Lady of Lourdes Hospital. She testified that she did not know what the surgery was for or whether it was causally related to the accident in question. It was Mrs. Melancon's testimony that Reliance did not actually learn of the laminectomy until Dr. Blanda's deposition was taken on September 14, 1977. Also, the evidence shows the first bill received by Reliance from Dr. Blanda for services in connection with the July 12, 1977 surgery, is dated September 15, 1977. On September 25, 1977, Reliance paid all medical bills and all compensation payments due since April 22, 1977. Payments were still being made at the time of trial.
LSA-R.S. 23:1201.2, applicable to employers, and LSA-R.S. 22:658, applicable to insurers, provide that claims must be paid "within sixty days after receipt of written notice." Defendants correctly point out that in the present case plaintiff gave no written notice to either the employer or the insurer of his claim for medical expense or compensation benefits arising out of the July 12, 1977 surgery. As stated above, Reliance did not learn of the surgery until *201 Dr. Blanda's deposition was taken on September 14, 1977. The medical expense was paid and compensation payments resumed on September 25, 1977.
We cannot agree with the trial judge that defendants were arbitrary for failing to investigate and pay immediately the hospital bills in connection with the July 12, 1977 surgery, which bills were received by Dwight Andrus and forwarded to Reliance either in late July or early August of 1977. Mrs. Melancon says she did not receive the bill until August 3, 1977, and, not knowing whether Reliance was liable, she did not pay it immediately. Of course, it was paid on September 25, 1977, which was within sixty days after Reliance had any reason even to investigate.
These penalty statutes, like all penalty statutes, must be strictly construed. Cole v. Sears, Roebuck & Company, 337 So.2d 900 (La.App. 3rd Cir. 1976); Thompson v. Natchitoches Parish Hospital Service District, 335 So.2d 81 (La.App. 3rd Cir. 1976). Penalties and attorney's fees will not be assessed unless it is clearly shown that the defendant was arbitrary and capricious, particularly where there has been no written notice of the claim and the defendant pays the claim within sixty days after it has adequate knowledge. Mayes v. International Paper Company, 185 So.2d 854 (La. App. 3rd Cir. 1966).
Having decided defendants are not liable for penalties and attorney's fees, we do not reach the question of whether the award of $7,500 for attorney's fees is excessive.
For the reasons assigned, the judgment appealed is reversed and set aside insofar as it awards penalties and attorney's fees. The judgment is amended so as to provide that benefits be paid for temporary total disability under LSA-R.S. 23:1221(1), instead of for permanent total disability. Otherwise, the judgment appealed is affirmed.
REVERSED IN PART, AMENDED IN PART AND AFFIRMED IN PART.