427 So.2d 1352 (1983)
Billy HARRIS, Plaintiff-Appellant,
v.
LOUISIANA PAVING COMPANY, INC. et al., Defendants-Appellees.
No. 15219-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1983.
*1353 Powell & Wilson by John W. Wilson, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for defendants-appellees.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
In this worker's compensation case judgment was rendered in favor of the claimant awarding benefits for total and permanent disability in the sum of $163 per week. Plaintiff appealed, contending the trial judge erred in rejecting his demands for penalties and attorney fees. Defendants (the employer and its worker's compensation insurance carrier) answered the appeal, asking that the compensation rate be reduced to $148 per week effective from the first week of compensation or, alternatively, from the date of the judgment and that they be given credit for overpayments.
For the reasons hereinafter set forth, we amend the trial court judgment to award penalties and attorney fees and reduce the weekly compensation rate to $148.

Context Facts
Plaintiff injured his left knee on August 28, 1980 while engaged in his employment as a heavy equipment operator for Louisiana Paving Company, Inc., but continued working until September 13, 1980, when his injury became disabling. Compensation benefits of $163 per week were paid by the employer's worker's compensation insurance carrier from September 15, 1980 until October 8, 1981.
Plaintiff was first examined for the knee injury by his treating physician, Dr. Donald Brian, an orthopedic surgeon, on October 15, 1980. As a result of this examination, Dr. Brian diagnosed the injury as a torn cartilage and performed corrective surgery on October 21, 1980.
On December 29, 1980, Dr. Brian reported:
"Patient returns today and examination reveals full range of motion. There is good quadraceps function. Recommendation: Will discharge the patient and allow him to return to work on January 5, 1981. Will have him return to this clinic PRN[*]."
In connection with that report Dr. Brian gave plaintiff a "return to work" slip certifying that he could resume his regular work duties on January 5, 1981.
Plaintiff returned to Dr. Brian on January 23, 1981, complaining of persistent pain in his left knee, whereupon Dr. Brian informed the defendants by a report dated February 9, 1981 that plaintiff was unable to return to work. Compensation payments that had been terminated on January 4, 1981 were resumed as of January 23, 1981 and brought up to date. Thereafter Dr. Brian saw plaintiff on March 6, May 1 and June 11, 1981. After the last visit he reported to the defendants:
"... [H]e still has medial joint line tenderness insofar as his knee is concerned. He has a full range of motion. No ligamentous instability.
Recommendation: At this point due to chronic pain with prolonged ambulation it is felt that Billy will be unable to return to heavy labor. He is to return in 2 months, at which time I will make a final determination as far as this is concerned."
Following an examination of plaintiff on August 6, 1981, Dr. Brian advised the defendants:

*1354 "Due to persistence of pain and complaints, it is my opinion that Billy Harris will have 15 per cent disability insofar as loss of function to his lower extremity is concerned. He is to continue oral anti-inflammatory medications on an out-patient basis. He is to return in 1 month for follow up examination."
Dr. Brian next saw plaintiff on September 11, 1981 and reported to defendants:
"Patient returns today and there has been essentially no change from previous exam. Once again I have informed him that it is my opinion that he will have chronic symptoms, aches and pains and swelling of the knee for the rest of his life. I have informed him that I have rated him 15 per cent disability insofar as his knee is concerned. I will discharge him today and he is to return PRN."
Upon receipt of the last report, the adjuster for the defendant insurer reasoned that plaintiff was entitled to worker's compensation benefits based upon a 15% permanent disability of the left lower extremity. Consequently, when the total payments made up to October 8, 1981 covered the entitlement as calculated by the adjuster, weekly compensation benefits were terminated.
This suit was filed on November 21, 1981.
Dr. Brian continued treating plaintiff. Finally, by report dated January 11, 1982, he stated:
"I discharged Billy on December 18, 1981. It is my recommendation that he seek a more sedentary type of work than he was engaged in at the time of his injury. I recommend no heavy lifting or bending. I will recommend no prolonged standing in one position."
Trial on the merits was held in March 1982. Subsequently, in written reasons for judgment the trial judge concluded that plaintiff was entitled to worker's compensation benefits for total and permanent disability "as provided by law." Plaintiff's demand for penalties and attorney fees was rejected with the statement that "considering the totality of circumstances in this case, we do not believe that the Defendant has acted arbitrarily and capriciously." Judgment pursuant to these findings was signed on June 9, 1982.

Penalties and Attorney Fees
Louisiana Revised Statutes 22:658 provides for the assessment of penalties and attorney fees against an insurer for failure to pay policy benefits within 60 days after receipt of proof of loss and demand for payment, when such failure is found to be arbitrary, capricious or without probable cause.
Once the payment of weekly worker's compensation benefits is begun, those payments may not be terminated on the basis of inconclusive medical reports. Instead, in such instance it is incumbent upon the insurer to engage in reasonable efforts to ascertain the claimant's exact medical condition prior to cutting off the payment of benefits. Salvador v. Slidell Industries, Inc., 415 So.2d 511 (La.App. 1st Cir.1982); Wiley v. Southern Casualty Ins. Co., 380 So.2d 214 (La.App. 3rd Cir.1980).
In this case the adjuster conceded that he ordered the termination of plaintiff's weekly benefits on October 8, 1981 solely upon the basis of Dr. Brian's medical report of September 11, 1981 stating that his patient suffered a 15% disability insofar as his injured knee was concerned. We deem it significant that nowhere in this report does Dr. Brian release plaintiff to return either to his former employment or to any other type of gainful employment. The assignment of a disability percentage for medical purposes, in itself, is certainly not determinative of the legal question of whether an injured worker is totally and permanently disabled within the contemplation of our Worker's Compensation statute.
After receiving the patently inconclusive medical report, upon which he relied to terminate benefits, the adjuster representing the defendants made no effort to determine plaintiff's exact medical condition; did not contact Dr. Brian for clarification of plaintiff's work status; did not arrange *1355 for an independent medical examination of plaintiff; took no other affirmative steps to ascertain plaintiff's ability to return to work.
Under these circumstances, we conclude that defendants were unreasonable in terminating plaintiff's worker's compensation benefits on October 8, 1981. See Patton v. Silvey Companies, 395 So.2d 722 (La.1981). Therefore, plaintiff is entitled to recover statutory penalties and attorney fees, the latter of which we fix at the sum of $5,000 for legal services rendered in the trial court and on appeal.

Reduction of Weekly Benefits
At the trial on the merits the parties agreed to several stipulations, including one to the effect that on August 28, 1980, the date of plaintiff's injury, the maximum compensation payable weekly was $163.00. As previously noted, this figure was incorporated in the judgment.
Now for the first time, in their answer to the appeal, defendants contend that their agreement to this stipulation was based on an error of fact and that the actual maximum weekly compensation on the date in question was $148.00.
In answering this argument plaintiff does not question the accuracy of the latter figure, but asserts that: (1) Defendants are bound by their stipulation; (2) the amount of plaintiff's compensation should be fixed as of the date he became disabled (September 13, 1980) rather than the date of injury and that $163 per week was in fact the maximum compensation payable on September 13, 1980; and (3) alternatively, even if the payments made by defendants to plaintiff were excessive, defendants are not entitled to credit therefor.
An express waiver made in court or preparatory to trial by a party or his attorney conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it. This is what is commonly termed a judicial admission or stipulation. It is a substitute for evidence in that it does away with the need for evidence. 9 Wigmore, Evidence (Chadbourn Revision 1981) Sec. 2588, p. 821.
As pointed out in Jackson v. Gulf Insurance Co., 250 La. 819, 199 So.2d 886 (1967):
"As a legal concept, the judicial confession is designed to dispense with evidence. It has the effect of withdrawing the subject matter of the confession from issue.
"A judicial confession under Article 2291 is a party's admission, or concession, in a judicial proceeding of an adverse factual element, waiving evidence as to the subject of the admission."
La.Civil Code Article 2291 provides:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It can not be divided against him.
It can not be revoked, unless it be proved to have been made through an error in fact. (emphasis added)
It can not be revoked on a pretense of an error in law."
La.R.S. 23:1202 specifies that for injuries occurring on or after September 1, 1977, the maximum weekly compensation shall be 662/3% of the "average weekly wage paid in all employment subject to the Louisiana Employment Security Law." It further provides (par. 2):
"For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the division of employment security on or before August 1 each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve month period commencing *1356 September 1 following the determination." (emphasis added)
According to the Louisiana Register (Vol. 5, No. 8, August 20, 1979), of which we are authorized to take judicial notice [La. R.S. 49:966(C)], the state's average weekly wage paid in all employment subject to the Employment Security Law for the period from September 1, 1979 to August 31, 1980 was $222.08  2/3 of which, rounded to the nearest dollar, is $148. Since the plaintiff was injured on August 28, 1980, the maximum compensation payable on that date was $148. Consequently, the stipulation at the trial that the maximum compensation on the date in question was $163 per week was based upon an error of fact and is not binding upon the parties.
Plaintiff's argument that the rate of compensation should be fixed as of the date that disability began is without merit, since La.R.S. 23:1202(2), supra, expressly refers to the date of occurrence of injury for determination of the rate of compensation. The cases upon which plaintiff relies deal with the date on which compensation payments should begin rather than the date which determines the fixing of the rate and are, therefore, distinguishable.
Although we have determined that plaintiff was only entitled to $148 per week as compensation benefits rather than $163, it is established by our jurisprudence that excess compensation payments made prior to judgment are considered to be in the nature of a "gratuity" and may not be credited as payments for future compensation. Futrell v. Hartford Accident and Indemnity Co., 276 So.2d 1271 (La.1973); Herrin v. Georgia Casualty and Surety Co., 414 So.2d 1323 (La.App. 2d Cir.1982). Therefore, defendants should be given credit for excess compensation payments of $15 per week only from June 9, 1982, the date of the district court judgment.

Decree
For the reasons detailed, we amend the trial court judgment to reduce the weekly compensation payments from $163 to $148 and order that defendants be given credit for excess weekly payments of $15 from June 9, 1982.
And, further, render judgment herein in favor of plaintiff, Billy Harris, against the defendant, Highlands Insurance Company, for penalties as provided in La.R.S. 22:658, computed on the basis of 12% of compensation payments due from October 8, 1981 until brought up to date, and for $5,000 as attorney fees.
As thus amended and supplemented, the district court judgment is affirmed, with costs of appeal assessed to defendants.
NOTES
[*] A standard medical abbreviation meaning "return as necessary."