461 So.2d 351 (1984)
Robert Lynn LAMETTE, Plaintiff-Appellee,
v.
MORRISON ASSURANCE CO., et al., Defendant-Appellant.
No. 16653-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
*352 Cook, Yancey, King & Galloway by Samuel W. Caverlee, Shreveport, for defendant-appellant.
Roland V. McKneely, Jr., Bossier City, for plaintiff-appellee.
Before PRICE, J. Pro Tem., and JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
In this worker's compensation case, defendants, the Magnolia Pulpwood Company, Inc., and its insurer, Morrison Assurance Company, appeal a judgment finding the plaintiff temporarily totally disabled and awarding him worker's compensation benefits of $166.50 per week from October 21, 1983 through the duration of his disability. The sole issue raised by their appeal is whether the record supports the trial court's finding that plaintiff is suffering disabling pain. The plaintiff, Robert Lamette, answered the appeal contending the trial court erred in denying his claim for penalties and attorney's fees.[1] We affirm.
Plaintiff was injured in a chain saw accident on May 2, 1983 while working as a wood cutter for Billy Turnipseed who was producing pulpwood for Magnolia. The chain saw plaintiff was operating slipped and cut into the big toe on his left foot. The bone, joint and nerves in the toe were severely damaged.[2] Plaintiff subsequently underwent two operations to repair the toe; *353 both of which were performed by Dr. Thomas Edwards, who is an orthopedic surgeon. In the first operation a pin was placed in the joint to hold the toe together. In the second operation a piece of bone was taken from plaintiff's hip and grafted over the joint in order to make it stiff and stable. Dr. Edwards treated plaintiff as an outpatient on numerous occasions following the operations.[3] After the accident defendants commenced paying plaintiff compensation benefits of $166.50 per week.
Dr. Edwards examined plaintiff on October 7, 1983 and found the toe had healed sufficiently to allow plaintiff to return to work. The same day Dr. Edwards sent defendants a report stating:
Robert returns and he is doing well in regard to his toe. The wound has had no drainage whatsoever. We removed the pin and x-rays show solid union of the bone graft. We will have him return to work and check with us in 2 months.
Within a few days after the October 7 doctor's visit plaintiff called a Mr. Haynes at Magnolia and informed him he was able to return to work. Haynes told plaintiff no work was available. Based upon the report from Dr. Edwards and plaintiff's call to Haynes defendants terminated plaintiff's benefits effective October 21, 1983.
On December 5, 1983 plaintiff returned to Dr. Edwards' office for the prescribed two month check-up. The doctor found no objective indications of complication with the toe that would create disability. He sent a report to defendants stating plaintiff was complaining of some aching from time to time but was generally functioning at a good level. The report further states that plaintiff is to continue his full activities and is otherwise released.
On December 19, 1983 plaintiff's attorney sent defendants a letter demanding that plaintiff's benefits be resumed retroactive to October 13, 1983.[4] Defendants rejected the demand.
On December 29, 1983 plaintiff returned to Dr. Edwards' office complaining of "some soreness" in his big toe. Dr. Edwards again found no objective symptoms and he prescribed sole pads for plaintiff's shoes.
Plaintiff filed suit on January 6, 1984 seeking compensation on the basis that he was suffering severe pain as a result of his injury and was unable to work. Trial was held on February 10, 1984.
Plaintiff testified he had pain from his toe since the accident. He stated that he had no foot problems prior to the accident. Since the accident his activities have been severely curtailed as he can neither stand nor walk for more than a few minutes without pain. He is unable to wear a shoe on his left foot due to pain and he suffers extreme pain every time he bumps his toe.[5]
Plaintiff's testimony is substantially corroborated by that of his father, a friend and his girlfriend. Defendant called no rebuttal witnesses. The only other witness to testify was Dr. Edwards. He testified to his treatment and diagnosis of plaintiff's injury. The trial court found plaintiff was suffering disabling pain as a result of the accident at the time of trial.

Disability
An employee is considered to be disabled if he is unable to engage in any self-employment or gainful occupation for wages without experiencing substantial pain. LSA-R.S. 23:1221(1) and (2). An employee is not required to work in substantial pain. Tyler v. American Mutual Liability Insurance Co., 212 So.2d 437 (La. App. 2d Cir.1968); Durham v. G & H Drug *354 Company, 216 So.2d 878 (La.App. 2d Cir. 1968).
Whether an injured employee's pain is substantial enough to render him unable to work is a question of fact. Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965); Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977). The trier of fact's determination on the pain issue should not be disturbed on appeal if there is reasonable evidence before the trier which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the determination, unless such finding is clearly wrong. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979); Kraemer v. Louisiana Power & Light Co., 393 So.2d 346 (La.App. 1st Cir. 1980); Ellis v. Rapides Parish School Bd., 419 So.2d 990 (La.App. 3d Cir.1982). Whether the pain is substantial enough to be disabling is ordinarily not a medical question but is an issue to be determined by the trier of fact on the totality of the evidence, both medical and lay. Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975); Lucas v. Ins. Co. of North America, supra; Bordelon v. Ranger Ins. Co., 413 So.2d 962 (La.App. 3d Cir.1982).
Defendants argue the trial court should have given more weight to Dr. Edwards' testimony that he found nothing objectively wrong with plaintiff's toe which would cause him to experience severe pain. This argument ignores other portions of Dr. Edwards' testimony in which he indicated that pain is a subjective phenomena. Dr. Edwards testified that although he released plaintiff to return to work, he expected him to experience some pain. The doctor further testified that the level of pain plaintiff experienced depended on the type of person he is and that there is nothing inconsistent in the level of pain plaintiff claimed he was experiencing at trial and the extent of his injuries. Dr. Edwards stated the big toe performs an important push function for the foot when walking is performed and the big toe performs a balancing function to the foot. He opined that the necessary bone graft which immobilized the joint in the big toe together with the scar tissue and damage to the nerve and blood supply created a permanent 5% partial disability in plaintiff's foot. He stated that he expected plaintiff to have pain in his foot and that only the plaintiff could determine if the pain was so severe that he was unable to work. The doctor further stated that he did not expect the pain in the foot to completely stop for about one year following the bone graft performed on the plaintiff's toe in June of 1983. We find nothing in Dr. Edwards' testimony which negates the possibility that plaintiff was experiencing disabling pain at the time of trial. The totality of the medical evidence and the lay testimony supports the trial judge's factual finding that plaintiff was suffering substantial pain creating disability.
Defendants contend a number of facts established at trial tend to indicate plaintiff is a malingerer. In Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App. 2d Cir.1984) we made the following observations concerning the malingering defense in worker's compensation cases:
The appellate courts of this state are reluctant to brand as a malingerer a compensation claimant who has been held to be disabled, and will not do so unless the trial court's finding is manifestly erroneous... The claimant will not be so stigmatized in the absence of positive and convincing evidence ... (cites omitted)
The most serious of defendants' factual arguments are: (1) plaintiff never told Dr. Edwards that he was suffering severe pain and he did not relay this information to Mr. Haynes at Magnolia when he informed him he was able to work; and (2) plaintiff failed to take measures, such as wearing shoes and exercising his foot, to improve the condition of his toe.
Dr. Edwards testified that plaintiff is not a complainer. His observation is based on the fact that plaintiff never complained much about pain even after the accident *355 first occurred. Dr. Edwards also testified that he never asked plaintiff about the level of pain he was experiencing.
Plaintiff testified he only intended to continue working, if work had been available, if he was physically able and the toe did not hurt too badly.
Plaintiff explained he did not wear shoes or exercise because these measures caused him a lot of pain. He was also never told that wearing a shoe and taking exercise would gradually decrease the level of pain he was experiencing.
We find that the above factual arguments are adequately explained by the record and do not warrant reversal of the trial court's determination that plaintiff is not malingering. The other factual arguments relied on by defendants are either irrelevant or are not the positive convincing evidence required to brand a compensation claimant as a malingerer in light of the trial court's finding to the contrary.[6]
There is substantial evidence in the record to support the trial court's determination that plaintiff was suffering disabling pain at the time of trial. We find no manifest error in that determination.

Penalties and Attorney's Fees
Plaintiff seeks penalties and attorney's fees because of defendants' termination of his benefits as of October 21, 1983.
An employer or its insurer shall be liable for penalties and attorney's fees for terminating benefits when the action is arbitrary, capricious or without probable cause. LSA-R.S. 23:1201.2; Harrison v. Chicago Mill & Lumber Co., supra.
Whether or not a termination of or refusal to pay benefits is arbitrary, capricious or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Scott v. Sears, Roebuck & Co., 406 So.2d 701 (La.App. 2d Cir.1981); Edwards v. Hartford Ins. Co., 445 So.2d 499 (La. App. 2d Cir.1984). The termination of benefits is not arbitrary, capricious or without probable cause when it is based upon legitimate disputes as to the extent or cause of claimant's disability. Hughes v. Webster Parish Police Jury, 414 So.2d 1353 (La. App. 2d Cir.1982); Harrison v. Chicago Mill & Lumber Co., supra. The question is ultimately one of fact and the trial court's finding should not be disturbed on appeal absent manifest error. Scott v. Sears, Roebuck & Co., supra; Edwards v. The Hartford Insurance Company, supra.
The trial court found defendants' termination of benefits was not arbitrary, capricious or without probable cause because it was based on Dr. Edwards' October 7 report releasing plaintiff to return to work and plaintiff's call to Haynes stating he was able to work. Relying on the case of Harris v. Louisiana Paving Co., Inc., 427 So.2d 1352 (La.App. 2d Cir.1983) plaintiff argues the trial court's finding is manifestly erroneous because defendants failed to properly investigate his claim.
In Harris we found the defendants had a duty to investigate whether the plaintiff was able to work because the doctor's report, while giving plaintiff a minimal disability rating of 15%, did not state he was able to return to work. Here, there was no indication in the October 7 report that plaintiff was disabled as a result of his injury. The report also indicates that Dr. Edwards unconditionally released plaintiff to return to work. The reference to having plaintiff return for a check-up in two months is merely an indication that Dr. Edwards wanted to check his progress. It *356 is not an indication that there was some limitation to plaintiff's ability to work.
We further note that although plaintiff testified he only intended to work if he was physically able, he did not inform Haynes that he may be incapable of performing his job without substantial pain. While plaintiff was on cross-examination the following colloquy took place:
Q. Okay. And then when you called Magnolia and talked to Haynes, the man over there within several days or so after Dr. Edwards released you, you remember isn't it correct that you told him you were ready to come back to work. Let me phrase it, you told him that the doctor had released you, you had another appointment to see him, and that he thought you might be ready, through (sic) you were ready to go back to work. You told the same thing to the doctor, to Mr. Haynes that you told us.
A. Well, yes, that's what I said.
Q. And then I remember I asked you did you tell him anything else, Mr. Haynes, and you said no, that was all. That's really
A. That's all. With the speculation well, may I add this? I said that with the speculation that I was willing to try to go back to work.
Q. Okay, now I understand that is what you said today, but in the deposition two days ago the only thing you told me you said to Haynes was that you, the doctor said you were ready to go back to work and you were presenting yourself back to work.
A. Yes.
Q. And then what you are telling me now that is in your mind you were going to kind of see what you could do?
A. Yes.
Q. Okay, but you didn't tell me that two days ago and you didn't say that directly to Haynes at Magnolia?
A. Right ....
At the time the decision to terminate plaintiff's benefits was made, defendants had no indication from plaintiff or his doctor that the injury may have rendered him unable to work. Without such an indication defendants had no duty to investigate the extent of plaintiff's injury. See Breaux v. Marine Elec. & Reliance Ins. Co., 369 So.2d 196 (La.App. 3d Cir.1979) which holds that an insurer was not arbitrary and capricious for discontinuing benefits where the insurer relied on a report from the plaintiff's doctor stating the plaintiff could return to his normal activities.
Plaintiff argues defendants were arbitrary and capricious for not resuming his benefit payments after receiving the demand letter of December 19 in light of Dr. Edwards' report from plaintiff's December 5 office visit. That report states:
Robert is doing well in regard to his toe and he has some aching from time to time but generally is functioning at a good level. We will have him continue his full activities and check with us if he has any further problems. He is otherwise released.
There is no indication in the report that plaintiff was suffering any disability or was unable to work. To the contrary, the report indicates plaintiff was physically capable of performing any activity he performed prior to the accident.
We find no manifest error in the trial court's decision to deny plaintiff's claim for penalties and attorney's fees.
The judgment of the trial court is AFFIRMED. All costs are assessed to defendants.
NOTES
[1] None of the parties question the amount awarded or the trial court's classification of plaintiff's disability as temporary total.
[2] The bone at the distal end of the approximal phalanx and the bone at the proximal end of the distal phalanx was damaged and 80% of the joint between was missing and one-half of the blood and nerve supply of the big toe was eliminated.
[3] Dr. Edwards is the only doctor who has treated plaintiff's injury.
[4] At trial it was stipulated that plaintiff received benefits through October 21, 1983.
[5] Plaintiff stated the only type shoes he has been able to wear since the accident is flip-flops. In reference to the sole pads prescribed by Dr. Edwards, plaintiff never informed the doctor he was unable to wear regular shoes. Dr. Edwards never asked plaintiff if he was able to wear regular shoes, although plaintiff always wore flip-flops during the office visits.
[6] Other facts pointed to by defendants are: (1) plaintiff only complained to a friend twice about his toe during a three month period of time; (2) since the accident plaintiff has spent 8-10 hours per day watching television; (3) plaintiff intended to apply for another job the week after trial; (4) plaintiff did not have a cane or crutch at trial despite testimony that he had to use a cane or crutch for walking; (5) there was conflicting testimony as to plaintiff's pre-accident activities; and (6) a person can function without a big toe. In connection with (6) we note Dr. Edwards testified that plaintiff would have recovered faster if his toe had been amputated. Dr. Edwards chose not to amputate the toe.