434 So.2d 479 (1983)
David M. HARRELSON, Plaintiff/Appellee,
v.
LOUISIANA PACIFIC CORPORATION, Defendant/Appellant.
No. 15403-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1983.
*481 Gaharan & Wilson by Paul Boudreaux, Jr., Jena, for defendant/appellant.
McKeithen, Wear, Ryland & Woodard by Cynthia T. Woodard, Columbia, for plaintiff/appellee.
Hicks & Brown by Donald R. Brown, Alexandria, for third-party defendant/appellee Rockwood Ins. Co.
Before PRICE, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
Plaintiff sued defendant for worker's compensation benefits. The trial court granted judgment in favor of the plaintiff, finding him totally and permanently disabled. We affirm the trial court's decree.
Plaintiff in this cause is David M. Harrelson, a 52 year old logger residing in Grayson, Louisiana. Defendant is plaintiff's former employer, Louisiana Pacific Corporation, a Delaware corporation which manufactures plywood and particle board in Louisiana. Rockwood Insurance Company, Mr. Harrelson's personal compensation insurer, was also made a party to the proceedings when Louisiana Pacific filed a third party demand against Rockwood, and plaintiff, Mr. Harrelson, subsequently amended his original suit to join Rockwood as a defendant.
After a trial on the merits, the trial court awarded judgment in favor of plaintiff and against defendant, Louisiana Pacific. The trial court decreed that the plaintiff was totally and permanently disabled, and was therefore entitled to disability benefits from the time of his injury until his recovery. The trial court also awarded plaintiff the amount of medical expenses and expert witness fees incurred by him. The trial court rejected plaintiff's claims for attorney's fees and penalties, and dismissed the claims brought against Rockwood by plaintiff and Louisiana Pacific. Louisiana Pacific, alone, now appeals.
Plaintiff began working for Louisiana Pacific in November of 1979 pursuant to an employment contract entered into with that company. Plaintiff's duties consisted of cutting and skidding logs, and hauling them to Louisiana Pacific's mill in Urania, Louisiana, where they were used by Louisiana Pacific in the milling of plywood and particle board. Mr. Harrelson hired his son and one other employee to assist him in this logging operation.
Plaintiff was injured on or about January 30, 1981, while logging a timber tract in southwestern Caldwell Parish. At the time of the accident, plaintiff's son was driving a skidder with a load of logs towards the truck onto which the logs were to be loaded. As the skidder approached the truck, a winch cable which was connected to the hydraulic grapple on the back of the skidder came loose. Plaintiff instructed his son to shut the skidder down so he could fasten the cable. As plaintiff was hooking the winch cable onto the hydraulic grapple on the back of the skidder, the petitioner slipped on some tree limbs underfoot. As plaintiff slipped, his right hand got caught in the grapple just as it was closing. The impact and pressure of the closing grapple crumbled and badly mangled plaintiff's right hand.
After being extricated by his son, plaintiff was taken to the Citizens Medical Center in Monroe, Louisiana, where emergency treatment was rendered. He was then immediately transferred to St. Francis Hospital in Monroe, where Dr. Rifat Nawas, his treating physician, diagnosed plaintiff's injury *482 as fractures of four of the five metacarpalsthe long bones in the hand which extend from the wrist to the knucklein the right hand. These fractures were described as open comminuted displaced fractures. Also, the plaintiff suffered a severe laceration of the skin on the back of the hand and "several tendons on the back of his hand were cut and injured."
Mr. Harrelson required immediate surgery to clean his hand and repair the fractures described. This included a skin graft, the implanting of K-wires inside these tube like bones, and the application of a splint, all requiring three to four hours. The plaintiff was hospitalized for approximately a week subsequent to this surgery.
On March 4, 1981, two of the K-wires were removed but the other two were left in place because the doctor suspectedconfirmed by a later diagnosisthat there was non-union and incomplete healing of the fractures of two of the bones. A second surgery was performed on April 7, 1981, involving the use of a bone graft and the replacement of the remaining K-wires with steel plates and screws, resulting in about 11 days hospitalization.
The third operation was performed on May 1, 1981. The procedures involved in that operation were never articulated in the record. Dr. Nawas testified that during the summer of 1981 he noted disuse atrophy in the right arm and improper healing of the skin over the plates and screws inserted in the second operation. In addition, plaintiff was suffering from a hypersensitivity to pressure and pain on the back of his hand. These problems resulted in a fourth operation on November 29, 1981, during which the plates and screws were removed.
At the time of plaintiff's injury, he was contractually bound to Louisiana Pacific to cut and haul timber for that company's use in its plywood and particle mill at Urania. Under that contract, plaintiff was to harvest timber on a specified tract for four weeks and was to be paid a unit price for the logs delivered by him. The contract stipulated that David Harrelson provide his own "industrial accident insurance," and required that he indemnify Louisiana Pacific for all claims arising out of his operations.
At the time of the injury, Mr. Harrelson also had in effect a compensation insurance policy issued by Rockwood Insurance Company. This policy, while covering Mr. Harrelson's employees, purported to exempt Mr. Harrelsonas the "sole proprietor" of his logging operationfrom its coverage.
Louisiana Pacific has urged, in the first instance, that plaintiff is ineligible for compensation benefits under the Revised Statutes because of his status as an independent contractor, rather than an employee. The statutory provision upon which the defense contention is predicated is LSA-R.S. 23:1021(5) which states:
"`Independent contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter." (Emphasis added).
Assuming arguendo that the instant plaintiff is not an employee but is in fact an independent contractor, a careful reading of LSA-R.S. 23:1021(5) clearly establishes that defendant's contention is without merit. Under LSA-R.S. 23:1021(5), the general rule that independent contractors are excluded from compensation benefits is subject to this express exception: Independent contractors are covered if a substantial part of their work time is spent in manual labor in carrying out the terms of the contract. The evidence clearly shows that Mr. Harrelson labored right along side his two employees in cutting, skidding and hauling timber, and he therefore spent a substantial part of his time in manual labor. Thus, plaintiff spent substantial time in manual labor in *483 carrying out the terms of his contract, and therefore fits within the exception to the general rule that independent contractors are ineligible for compensation benefits.
Also, in this respect, we should note that Louisiana Pacific exercised extensive control over the plaintiff, instructing him where to cut, which trees to cut, and the length and quality of trees to be used. Supervisors were in the field daily with the authority to move the plaintiff to any area Louisiana Pacific desired to have logged. These circumstances of this case are very similar to Brewton v. L.L. Brewton Lmbr. Co., Inc., 349 So.2d 1364 (La.App. 2d Cir. 1977) and Woodard v. Southern Casualty Insurance Co., 305 So.2d 528 (La.1974) where compensation was awarded.
The next defense urged by Louisiana Pacific is that plaintiff contractually released Louisiana Pacific from all compensation liability. In support of this claim, Louisiana Pacific points to paragraphs 8 and 9 of its employment contract with plaintiff, and to LSA-R.S. 23:1035.[1] LSA-R.S. 23:1035 makes an express exception to the general statutory prohibition of contracts against compensation liability,[2] by authorizing the waiver of compensation coverage by corporate officers and sole proprietors.
Whether the purported waiver urged by Louisiana Pacific comports with LSA-R.S. 23:1035 need not be decided herein, since the contractual provisions relied upon by Louisiana Pacific do not constitute a waiver of plaintiff's compensation coverage. Paragraph 8 of plaintiff's employment contract with Louisiana Pacific states, in pertinent part, that:
"Before any work is undertaken under the terms of this Contract, ... industrial accident insurance ... shall be procured by Contractor at Contractor's expense, covering all employees of Contractor who shall also be responsible for Contractor's contractors obtaining like insurance for Contractor's contractors' employees." (Emphasis added).
It is clear, under these terms, that David Harrelson, as contractor, was responsible for securing coverage for his employees and for his sub-contractors' employees. However, this provision does not in any fashion require David Harrelson to secure coverage for himself. Thus, defendant's contention *484 that paragraph 8 constitutes a waiver of plaintiff's coverage is without merit.
Under paragraph 9, the
"Contractor agrees to indemnify and save harmless [Louisiana Pacific] ... from any and all costs, expense ... or liabilities... arising out of ... or resulting from the operations hereunder of Contractor... which may be asserted by any third party ...." (Emphasis added).
It is thus clear that contractor David Harrelson agreed to indemnify Louisiana Pacific for the claims, arising out of his operation, which were brought by third parties. However, paragraph 9 in no way dictates that Mr. Harrelson indemnify the company for claims brought by himself. Mr. Harrelson was a party to the contract of which paragraph 9 is a part, is not a "third party," and thus need not indemnify Louisiana Pacific for the claims brought by him. Thus the contention that plaintiff waived compensation liability under paragraph 9 is also without merit.
The last major argument urged by Louisiana Pacific in its defense is that plaintiff's compensation insurer, Rockwood Insurance, should be liable for part or all of the compensation benefits due under an insurance policy issued by Rockwood to plaintiff. This contention fails, because plaintiff entered into an insurance contract with Rockwood which, unlike the employment contract with Louisiana Pacific, clearly excluded plaintiff's compensation coverage and covered only his employees. The insurance policy issued by Rockwood to plaintiff provided, by means of an attached exclusion, that "Such insurance as is afforded by [this] policy ... does not apply to injury ... sustained by the below named sole proprietor, [David Harrelson]." This contractual waiver is valid under LSA-R.S. 23:1035(A) which authorizes a sole proprietor to waive coverage with respect to his sole proprietorship. That statutory provision clearly contemplates that a sole proprietor may forego bringing compensation claims against his own business, or against the insurer who he himself has paid to stand in the place of his business and assume his business's compensation liability.
Louisiana Pacific attempts to articulate the additional argument that since plaintiff waived compensation coverage vis a vis his own insurer, Louisiana Pacific should be able to avail itself of this waiver. This contention is contrary to fundamental obligations principles. This waiver nullified plaintiff's right to bring compensation claims against Rockwood; it in no wise purported to abrogate plaintiff's right to bring compensation claims against Louisiana Pacific. A contract constitutes the law between the parties, LSA-C.C. Arts. 1901, 1945. "Those only are parties to a contract, who have given their consent to it, either expressly or by implication." LSA-C.C. Art. 1780. Louisiana Pacific was not a party to the contract between plaintiff and Rockwood, either expressly or implicitly, and therefore the effects of that contract do not extend to Louisiana Pacific. See LSA-C.C. Art. 1889. Furthermore, the contract between Rockwood and plaintiff cannot properly be viewed as a stipulation pour autrui in Louisiana Pacific's favor under LSA-C.C. Arts. 1890 and 1902 since there was neither an intent nor an attempt on the part of plaintiff or Rockwood to stipulate an advantage in Louisiana Pacific's favor.
Finally we consider appellant's contention that the trial court erred in determining that this plaintiff was totally and permanently disabled. This finding is supported by the record and not clearly wrong. It will therefore not be disturbed by us on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Dr. Nawas stated that Mr. Harrelson's hand "was really badly injured, and it falls in the category of what we call `mangled hand,' where he had severe injury to the soft tissue, to the tendons, and to the bone, and to the skin .... [F]ortunately, his hand was saved; and we did not need to amputate it." Because of residual weakness, Dr. Nawas commented, plaintiff is unable to execute a full gripping motion, has lost "some of the fine motions in his fingers," cannot make a fist, is unable to *485 bring the tips of his fingers back towards his wrist, and "does not have the normal strength in the muscles to function normally, and to be able to carry heavy things like a regular person," the carrying ability of his hand being limited to "10 to 15 pounds." As Dr. Nawas observed, "There are serious impairments to the function of the hand." Concluded Dr. Nawas, as of December 7, 1981, plaintiff was still disabled, by virtue of his injured hand, from performing "normal labor" and would encounter substantial pain and difficulty in completing an 8 hour shift of physical labor.
Dr. Rambach, who examined the plaintiff prior to trial and testified as plaintiff's expert orthopedic surgeon, noted the deteriorating skin and nerve conditions of the plaintiff's hand. Dr. Rambach further testified that plaintiff was suffering from osteoporitis, a degenerative bone condition. He observed imperfect healing and stated that "the man had a markedly malfunctioning hand."
Dr. Rambach assigned an 80% disability of the hand and noted the plaintiff would have difficulty even picking up an ink pen. In testifying that this percentage of disability was conservative, he was emphatic that the plaintiff could not pass a medical examination for any type of manual labor and further stated that the plaintiff was disabled from even being a truck driver.
The testimony of the defense's expert orthopedic surgeon, Dr. Frederick Mayer, was consistent with that of Doctors Rambach and Nawas. Dr. Mayer assigned a 75% disability of the hand, though he was not so certain as Dr. Rambach that plaintiff could not perform as a truck driver.
The medical prognoses of Doctors Rambach and Nawas were further corroborated by the testimony of plaintiff's wife, Pauline Harrelson. According to Mrs. Harrelson, since Mr. Harrelson's injury he has been unable to work on automobiles, put on his own wrist watch, or gather firewood. At times, Mrs. Harrelson has had to assist him in getting dressed. Mr. Harrelson was also not able to write with his right hand for extended periods of time.
LSA-R.S. 23:1221(2) provides that a worker is to be considered permanently and totally disabled where his disability prevents him from engaging in "any gainful occupation for wages." Under the "odd-lot" doctrine, the total disability classification has been interpreted to include all employees who, because of their injuries, may only perform services that are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). This plaintiff left school in the 7th grade, has spent most of his adult life in the logging business, and is not suited by experience or education for administrative or managerial positions.
Therefore, this plaintiff has made a prima facie showing that a reasonably stable market for his work does not exist as required by Oster, supra. The burden then shifts to the defendant to show that there are jobs available which will provide a steady income or a "gainful occupation." White v. Johns-Manville Sales, Corp., 416 So.2d 327 (La.App. 5th Cir.1982); Crockett v. St. Paul Ins. Co., 413 So.2d 949 (La.App. 1st Cir.1982). The defendant has failed to do so. Therefore because the plaintiff is unqualified for "desk-type" jobs, and because he is prevented by the functional impairment of his right hand from engaging in manual labor, the plaintiff is well within the total disability classification.
For the foregoing reasons, the judgment appealed from is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 23:1035 provides that:

A. The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his own trade, business, or occupation, or in the course of his employer's trade, business, or occupation, except that the bona fide president, vice president, secretary, and treasurer of a corporation who owns not less than ten percent of the stock therein, or a partner with respect to a partnership employing him, or a sole proprietor with respect to such sole proprietorship may by written agreement elect not to be covered by the provisions of this Chapter. Such election shall not be limited, but shall apply to all trades, businesses, or occupations conducted by said corporations, partnerships, or sole proprietorships. Such an election shall be binding upon the employing corporation, partnerships, and sole proprietors and the widow, relatives, personal representative, heirs, or dependents of the officer, partner, or sole proprietor so electing. No salary or compensation received by any such bona fide corporate officer, partner, or sole proprietor so electing shall be used in computing the premium rate for workmen's compensation insurance.
B. There is exempt from coverage under this Chapter all labor, work, or services performed by any employee of a private residential householder in connection with the private residential premises of such householder and which labor, work, or services are not incidental to and do not arise out of any trade, business, or occupation of such householder. With respect to such labor, work, or services and any employee performing the same, a private residential householder shall have no liability under the provisions of this Chapter either as employer or as a principal; however, any person, who is engaged in the trade, business, or occupation of furnishing labor, work, or services to private residential premises shall be liable under the provisions of this Chapter to his employees or their dependents for injury or death arising from and incidental to their employment in rendering such labor, work, or services.
[2] LSA-R.S. 23:1033 provides that:

No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.