517 So.2d 918 (1987)
Patrick G. CRAWFORD, Plaintiff-Appellant,
v.
MIDWEST STEEL COMPANY, INC., Fireman's Fund Insurance Company and American Insurance Company, Defendants-Appellees.
No. 86-853.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
*919 Cox, Cox & Townsley, James J. Cox, Lake Charles, for plaintiff-appellant.
Raggio, Cappel, etc., Stephen A. Berniard, Jr., Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOMENGEAUX, Judge.
Patrick George Crawford brought this action seeking worker's compensation benefits for an injury he sustained during the course of his employment with Midwest Steel Company, Inc. (Midwest). Crawford named as defendants, Midwest, and Midwest's worker's compensation insurance carriers, Fireman's Fund Insurance Company (Fireman's Fund) and American Insurance Company (American).
The trial court characterized Crawford's disabilities as total and permanent, and rendered judgement accordingly. Crawford, in addition to his medical expenses, was awarded $204.00 per week from February 23, 1983, the date of the accident, until the occasion on which his disabilities should cease. The court, however, suspended Crawford's right to receive weekly compensation benefits and decreed those benefits forfeited during the period of his incarceration in the State's penal system. Crawford was also awarded penalties in the amount of twelve percent per annum on all past due benefits and attorney's fees in the amount of $3,500, for the arbitrary and capricious termination of his benefits. The judgment concluded by awarding the plaintiff his expert witness' fee of $770.00 and all cost of the trial proceedings.
On appeal, all parties have assigned errors. Crawford challenges the decision of the district court ordering his weekly compensation benefits suspended and forfeited during the period of his incarceration. Midwest, Fireman's Fund and American collectively answered Crawford's appeal, and contend that: (1) the district court erred in determining that Crawford is totally and permanently disabled; (2) the decision awarding Crawford penalties and attorney's fees for the alledgedly arbitrary and capricious termination of his benefits, is in error; and (3) alternatively, the amount of the attorney's fee award is excessive.

FACTS
On February 23, 1983, Crawford, as an employee of Midwest, was responsible for assisting in the demolition of a warehouse. Crawford's work that day required that he climb the structure and use "torches," presumably acetylene torches, to cut piping and large slabs or sheets of fiberglass. It was during this project that Crawford was injured.
Subsequent to getting a drink of water, Crawford began to reascend the structure to complete his assignment. Upon reaching the fifty foot level, Crawford heard an unusual noise above his head. When he looked up, he saw a large slab of fiberglass, estimated to weigh 900 pounds and approximately 30 feet in length, falling towards him.
Unable to escape the path of the fiberglass, Crawford was struck. He was apparently not, however, struck with the full force and weight of the object. The initial blow occurred on the lower front aspect of Crawford's right leg. The fiberglass, as it continued its descent, then pushed his right leg back and then partially impacted on his ankle.
Crawford's right foot, which at the time was resting partially extended over the edge of the beam on which he was standing, was then impinged. The fiberglass, as it landed on the plaintiff's foot and the beam, began to fall backwards off his foot. Crawford's right foot, although he was wearing working boots, was then extended toes first towards the ground.
Eventually, the fiberglass fell to the ground. Realizing the seriousness of his injuries, Crawford descended the structure and was taken to the hospital.

*920 NATURE AND EXTENT OF WORKER'S DISABILITY
The initial issue on appeal is whether the trial court correctly concluded that the plaintiff's injuries rendered him totally and permanently disabled. The defendants suggest that Crawford is only partially and permanently disabled. Subsequent to our review of the record, we believe that the decision of the lower court should be affirmed on this issue.
The manifest error standard is the appropriate standard of review in cases of this nature. Appellate courts, when called upon to review worker's compensation disability determinations, are obligated, according to well-settled jurisprudence, to give the factual findings of the lower court great weight and are not to disturb those findings absent clear error. Belt v. State, Through Louisiana Department of Cosmetology, 493 So.2d 278 (La.App. 3rd Cir. 1986), writ denied, 496 So.2d 1044 (La. 1986).
The rights of the plaintiff in this case vested at the moment he was injured. We will, therefore, render this decision based upon the law in effect on February 23, 1983. The right to recover worker's compensation benefits is a substantive right and may not be retroactively altered. La. R.S. 23:1221 (1950) (amended 1968 and 1975); La.R.S. 1:2 (1950).
The extent to which an injured worker is legally disabled and the amount of compensation benefits to which that worker may be entitled, may only be determined subsequent to a review of R.S. 23:1221. R.S. 23:1221 provides the criteria by which total and partial disability is ascertained. A worker is totally disabled when, as a result of his injuries, he is unable:
to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee, at the time of the injury, was particularly fitted by reason of education, training, and experience.... (emphasis added). La.R.S. 23:1221 (1)-(2), Supra.; See also, Shouest v. J. Ray McDermott & Co., 411 So.2d 1042 (La.1982).
An injured worker is considered to be only partially disabled when because of his injuries, he is unable:
to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience.... La.R.S. 23:1221 (3), Supra.; See also, Bernard v. Merit Drilling Co., 434 So.2d 1282 (La.App. 3rd Cir.1983).
Jurisprudentally, an injured worker may also be considered totally disabled if he falls within the parameters of the "Odd-Lot" Doctrine. R.S. 23:1221, the statutory source of the doctrine provides that total disability is the inability to "engage in any gainful occupation." Engaging in a gainful occupation, it has been stated, "conveys the meaning of fairly steady, available employment, not a series of pick-up jobs where the employee is the very last hired and first fired." 13 W. Malone & H. Johnson, Louisiana Civil Law Treatise at 626 (1980). A worker will, therefore, be adjudicated as "odd-lot" worker if because of his physical impairment, mental capacity, education, training, age or any other factor particular to the individual, he is substatially disadvantaged in competing with able-bodied workers for employment in a competitive labor market. Woodward v. Gregory and Cook, Inc., 442 So.2d 912 (La.App. 3rd Cir.1983); Harrelson v. Louisiana Pacific Corp., 434 So.2d 479 (La.App. 2nd Cir.1983).
A worker may also be declared an "odd-lot" worker if he can only work in pain which is so substatial that he could be a potential source of danger to himself or his co-workers, or if because of pain he can not properly perform his assigned tasks or can only perform those tasks with the assistance of his fellow workers. The worker, in either case, is not a desirable employee and must be considered to be substantially disadvantaged in attempting to acquire and retain employment in a competative labor market. Culp v. Belden Corp., *921 432 So.2d 847 (La.1983); Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982).
Crawford, at the time of the trial, was a twenty-four year-old high school graduate who possessed limited vocational training and experience. Crawford testified that he acquired his only vocational training, that of carpentry, while a high school student. He testified that during his high school years and immediately thereafter he worked as a carpenter or carpenter's helper with his father. Subsequent to working with his father, Crawford was employed as a non-union carpenter's helper by Robinson Construction Co. Crawford's responsibilities for Robinson included running errands and performing other duties commonly assigned to inexperienced general laborers.
Subsequent to working as a carpenter or carpenter's helper, Crawford was employed by Midwest, and has worked as an inmate laborer at the Calcasieu Parish Rehabilitation Center (CPRC) and the Louisiana Correctional and Industrial School, (LCIS). The plaintiff's duties for Midwest, for whom he worked only three weeks, consisted entirely of those commonly assigned general laborers including, of course, the use of acetylene torches to cut piping and fiberglass. Crawford's assignments at CPRC, in which he was confined for approximately ten and one-half months, required that he work in the mechanic's pool where he maintained parish automobiles, pumped gas and performed general office filing. Crawford, as an inmate at LCIS, where he was confined at the time of trial, was responsible for repairing small engines.
Crawford testified at trial, which was held in May, 1986, that any attempt to complete a full day's work caused him to experience severe pain and discomfort. The plaintiff stated that he was only capable of working approximately four consecutive hours, after which he would find it necessary to rest his right foot for one to two hours. Crawford further testified that his injury resulted in the greatest inconvenience when he attempted to stand in one position for an extended period of time or when he would attempt to carry heavy objects. Depending upon the type of work he was performing, Crawford stated that his inability to withstand the pain, even with considerable use of aspirin, Tylenol and Advil, occasionally reduced his productive periods to only one hour.
The plaintiff's testimony regarding the physical condition of the surface of his foot indicated that it was fairly well-healed. Crawford stated that, with the exception of scaring and a rather sizable "bump" on the top of his foot towards his ankle, there were few external manifestations of his injury. Crawford did, however, inform the court that he was wearing a specially adapted tennis shoe with an unusually soft tongue and a considerably more supportive sole than is customary.
The medical evidence upon which the court relied in rendering its decision was provided by Dr. Walter P. Ledet, Jr., the emergency room physician who initially treated Crawford, Doctors Thomas F. Crais, Jr. and Harold M. Stokes, associates in a medical partnership specializing in plastic and orthopedic surgery, and Dr. George P. Schneider, an orthopedic surgeon who testified as the plaintiff's expert witness. Dr. Ledet testified that he treated the plaintiff from the day he was injured, February 23, 1983, until January, 1984. Dr. Ledet stated that during Crawford's initial hospital stay, the first of three occasions for which he was hospitalized as a result of the accident, Crawford underwent major surgery upon admission and, thereafter, underwent minor surgery, in the nature of debridement, skin grafting and general wound cleaning, approximately every five days for the following month. Upon his last opportunity to examine the plaintiff, in January, 1984, Dr. Ledet was of the opinion that Crawford's injuries were still very severe and he did not believe that Crawford had recouperated sufficiently to enable him to return to work.
Drs. Crais and Stokes, whose testimony was received by way of depositions, began treating Crawford in June or July of 1984, as a result of Fireman's Fund's suggestion to Crawford that he consult the doctors.
*922 Dr. Crais testified that when he first saw the plaintiff, Crawford was experiencing a chronic bone infection and had an open wound on his right foot. The doctor stated that to combat the condition a section of muscle tissue with blood vessels was removed from the plaintiff's upper back or shoulder and used as a flap to close the wound. Subsequent to the back/shoulder surgery, Dr. Crais, in a January, 1985, letter directed to Fireman's Fund, concluded that Crawford was fifteen to twenty percent disabled.
Dr. Stokes testified that Crawford had continually complained of a "dull" pain in his right foot and that he had observed the development of a mild case of arthritis. The doctor, repeating that which Crawford had told him, stated that the plaintiff was taking an average of six aspirin or Advils daily to help him withstand his discomfort. Dr. Stokes' professional opinion regarding Crawford's physical condition was that Crawford was capable of working a full eight hour day, if he could sit and stand at will.
Dr. Schneider, the plaintiff's medical expert, testified that Crawford was approximately thirty percent permanently but partially disabled in his right foot. The doctor stated that he did not believe that Crawford was capable of performing heavy manual labor and that, in his opinion, the plaintiff could not work a full eight hour day involving standing, walking and climbing, without experiencing pain. Dr. Schneider specifically noted that his examination of Crawford revealed limited movement in his big toe and reduced agility in his ankle.
Testifying on behalf of the plaintiff, in addition to the doctors, was Ronnie Dale Cannon, Shop Supervisor of the Calcasieu Parish Sheriff's Office and Margie Marie Crawford, the plaintiff's mother. Cannon and Margie Crawford both testified regarding their personal experiences with the plaintiff, attempting, from a layman's point of view, to shed greater light on Crawford's exact physical condition.
Cannon, at the time of trial, was a forty-three-year-old individual with nineteen years experience as a journeyman carpenter. Eight of Cannon's nineteen years in carpentry included service as the business agent of the local carpenter's union. Subsequent to leaving carpentry, Cannon was hired to be the Shop Supervisor of the Calcasieu Parish Sheriff's Office and has since been responsible for the maintenance of parish automobiles. It was while working as the Shop Supervisor that Cannon met and observed Crawford.
Cannon, as Shop Supervisor, was Crawford's immediate superior during his incarceration in CPRC. Cannon testified that, despite what he believed to be the plaintiff's sincere attempts to complete a full work day, the plaintiff was unable to work eight hours. The plaintiff, to the best of Cannon's recollection, could only work one and one-half to two hours before he would begin to favor his right foot. Cannon testified that eventually he would have to instruct Crawford to take a break and rest his foot.
Cannon's testimony of Crawford as a worker was highly complementary but, did not paint a bright picture for his future. Cannon stated:
Pat is the type of worker you find, probably, one out of every hundred kids. You know, he's dedicated to his work and tries to do a good job, and you have to slow him down sometime.
Although complementary of Crawford's work, Cannon did state that because of the injury to his foot he did not believe that Crawford could hold down a job as a carpenter's helper.
Margie Crawford's testimony addressed her son's physical condition and his work experience. Crawford's mother testified that prior to her son's accident he was an able-bodied young man able to retain employment. She did, however, testify that subsequent to his injury, her son, whom she said was not a complainer, complained of pain and discomfort in his right foot which forced him to become less active.
It is based upon the above facts that we affirm the decision of the lower court declaring the plaintiff to be totally and permanently disabled.

*923 ENTITLEMENT TO WEEKLY WORKER'S COMPENSATION BENEFITS DURING PENAL INCARCERATION
Having concluded that Crawford is totally and permanently disabled, we must now address the issue of whether a single individual without dependents is entitled to receive weekly worker's compensation benefits while incarcerated in a state penal institution. The only relevant facts are that, subsequent to his accident, Crawford engaged in criminal activity which resulted in his arrest, conviction and sentence to confinement behind bars.
The trial court, resolved the case by reviewing the purpose underlying Louisiana's worker's compensation legislation. The trial court specifically cited Atchison v. May, 10 So.2d 785, 788 (La.1942) which held:
The act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who become disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families.
The court concluded that it would be contrary to the purpose of the Worker's Compensation Act (the Act) to require compensation insurers to pay weekly compensation benefits to a worker who because of his imprisonment requires no upkeep and who has no dependents.
Subsequent to our review of the entire Worker's Compensation Act, R.S. 23:1021 et seq., and having reviewed the jurisprudence of this and other jurisdictions which have previously confronted this question, we must respectfully reverse the decision of the lower court. Crawford, in this particular situation, is entitled to recover weekly worker's compensation benefits irrespective of his incarceration. We note for the record, however, our decision is limited by the facts of this case, particularly the fact that this plaintiff is totally and permanently disabled. Cf., Wheeling-Pittsburg Steel Corp. v. Workmen's Compensation Appeal Board, 38 Pa.Cmwlth. 370, 395 A.2d 586 (1978).
Louisiana's Worker's Compensation Act was intended by the legislature to be incorporated into every employment contract. The Act and the coverage provided is akin to insurance, and the nature of the employer-employee relationship is, for compensation purposes, one of obligor-obligee. Turner v. Southern Wheel and Rim Service, Inc., 332 So.2d 770 (La.1976); Cf., Matter of Injury to Spera, 713 P.2d 1155 (Wyo. 1986).
Some of the often stated purposes underlying our worker's compensation legislation are: (1) to provide an injured worker with a means of subsistance during the period of his diminished earning capacity; (2) to enable the injured worker to care for himself and avoid becoming a burden on his family or a charge on the state; and (3) to distribute to the consumer, as a cost of the product or service, the expense of providing for a worker injured during the manufacter or distribution of those products and services. Duplechien v. States Exploration Co., 94 So.2d 460 (La.App. 3rd Cir.1957); Fidelity & Casualty Co. of New York v. Masters, 335 So.2d 722 (La.App. 3rd Cir.1976), writ denied, 338 So.2d 297 (La.1976); Goodman v. Hillyer, Deutsch, Edwards, Inc., 49 So. 2d 60 (La.App. 2nd Cir.1951); Evans v. Naihaus, 326 So.2d 601 (La.App. 4th Cir. 1976). The legislature concluded that the most effective means for accomplishing the above stated objectives was to substitute a system of recovery based upon liability with fault for a system of compensation based upon liability without fault. Workers within the bounds of the Act forfeit their right to sue for damages in exchange for the right to receive statutory compensation benefits.
Considered from this point of view, confinement in a penal institution is immaterial. The worker in question, confined or otherwise, has statutorily relinquished his right to recover damages based upon fault for the right to receive compensation benefits. Should our legislature have declined to enact worker's compensation legislation, the injured worker's recourse would have been a suit founded on tort principles and it would be of no moment to his recovery that *924 subsequent to his injury he has become incarcerated in a penal institution.
The only Louisiana decision addressing the right of an imprisoned claimant to receive worker's compensation payments is King v. McClanahan, 3 La.App. 117 (1925). The Court in King, interpreting the Workmen's Compensation Law, Act No. 20 of 1914, as amended by Act No. 43 of 1922, concluded that a claimant's right to compensation benefits should not be effected by the fact that he is subsequently incarcerated. The Court held that the worker's right to receive compensation benefits was not dependent upon the amount of wages he earned subsequent to his injury but, rather, the test was the amount of wages he would be capable of earning if he had not been imprisoned. The Court concluded by noting that the claimant's ability to work could be tested while in prison and that his benefits could be decreased or terminated should such action be appropriate.
Ultimately, we are of the opinion that the authority to suspend or forfeit an injured worker's entitlement to worker's compensation benefits must be expressly provided by statute or, at the very least, necessarily implied from a reading of the statute as a whole. Cf., La.R.S. 23:1225 (1978) (amended 1983) (expressly providing for the reduction of benefits when certain benefits provided by the federal government are payable). A reading of the Act, as effective on February 23, 1983, establishes that recovery is founded upon a diminution or loss of earning capacity. Compensation benefits are not paid in lieu of lost wages. R.S. 23:1221 (1)-(3), supra.; 13 W. Malone & H. Johnson, Louisiana Civil Law treatise at 595 (1980); Sims V.R.D. Brooks, Inc., 204 N.W.2d 139 (Mich.1973); Matter of Injury to Spera, supra; Cf., King, supra. Although it may be argued that one confined to prison has, for the duration of his confinement, no earning capacity, we believe that this is an issue the resolution of which is more appropriately left to the legislature. Tullier v. Tullier, 464 So.2d 278 (La.1985); La.Civ.Code art. 1 (1870). We find no authority in the Act for the proposition that an incarcerated injured worker's benefits may be suspended or forfeited during the period of his confinement.
It is based on the above stated reasons that we must reverse this aspect of the district court judgment.[1]

PENALTIES AND ATTORNEY'S FEES
Fireman's Fund, by letter dated January 31, 1985, was informed by Doctors Allen, Crais and Stokes, that Crawford was physically fit to return to work. The letter, in its entirety, read:
It is our impression that Mr. Crawford can return to his work status at this time. I feel that his permanent partial disability should be 15-20% of the foot and that he should return to us as instructed for subsequent follow-up. (emphasis added).
Subsequent to receipt of the above letter, Crawford's weekly worker's compensation benefits were discontinued.
Crawford, pursuant to La.R.S. 22:658 (1950) (amended 1958), sought at trial, to obtain penalties and attorney's fees alleging the termination of his benefits was arbitrary and capricious. R.S. 22:658 provides, in part,
All insurers ... shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a *925 penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount.
The trial court, in agreement with the plaintiff that the termination of his benefits was arbitrary, capricious and without probable cause, awarded him statutory penalties and attorney's fees.
Subsequent to our review of the record, We must respectfully reverse the decision of the trial court. We do not believe that the decision of the defendants to terminate Crawford's weekly compensation benefits was arbitrary, capricious or without probable cause.
The jurisprudence has consistently held that a denial or termination of worker's compensation benefits is not arbitrary, capricious or without probable cause when the action of the employer or insurer is based upon competent medical reports or evidence. Cf., Martin, Supra.; Breaux v. Marine Electric & Reliance Insurance Co., 369 So.2d 196 (La.App. 3rd Cir.1979), writ denied, 371 So.2d 1344 (La.1979). The decision of the defendants in this case rested on the unambiguous statement of the plaintiff's doctors that he could "return to work status." We do not believe that the reliance of the defendants on that statement was unjustified, particularly in the light of the fact that R.S. 22:658 is penal in nature and should be strictly construed. Cf. Martin, Supra.; Gibson v. Hayes Oilfield Construction Co., 467 So.2d 1304 (La. App. 3rd Cir.1985), writ denied, 472 So.2d 918 (La.1985); Cole v. Sears Roebuck & Co., 337 So.2d 900 (La.App. 3rd Cir.1976).
The trial judge, in his reasons for judgment, stated that "Dr. Crais' deposition demonstrates that he did not intend to indicate that plaintiff could perform his former duties as a laborer." We have read the doctor's deposition and we agree with the trial judge. We are, however, unable to conclude that the conduct of the defendants was arbitrary or capricious because the record does not reveal that the defendants were appraised of any facts other than the statement in the January 31, 1985 letter that Crawford could return to his former line of work.
For the above and foregoing reasons the judgment of the district court is affirmed in part and reversed in part, as follows:
(1) the judgment of the district court in favor of the plaintiff, Patrick G. Crawford, and against the defendants, Midwest Steel Company, Inc., Fireman's Fund Insurance Co. and American Insurance Co., awarding Patrick G. Crawford worker's compensation benefits in the amount of $204.00 per week from February 23, 1983, through the period of his total and permanent disability, plus all reasonable medical expenses, less compensation previously paid, plus trial court costs, is affirmed;
(2) the judgment of the district court declaring Patrick G. Crawford's entitlement to worker's compensation benefits suspended and forfeited during the period of his incarceration which began on May 6, 1985, is reversed, and all weekly compensation payments previously suspended and forfeited are due and payable, with legal interest on each past due installment from its due date until paid and;
(3) the judgment of the district court in favor of Patrick G. Crawford and against Midwest Steel Company, Inc., Fireman's Fund Insurance Co. and American Insurance Co. awarding Patrick G. Crawford penalties and attorney's fees is reversed.
All costs of this appeal are assessed: one-half to the plaintiff, Patrick G. Crawford, and one-half to the defendants, Midwest Steel Co., Inc., Fireman's Fund Insurance Co. and American Insurance Company.
AFFIRMED IN PART REVERSED IN PART AND RENDERED.
NOTES
[1] We recognize that in the future the defendants may be inconvenienced in their efforts to reopen this case pursuant to R.S. 23:1331 and/or pursue their other rights accorded by the Compensation Act. The plaintiff's incarceration should, nevertheless, not prevent such action. It is premature, however, to render any opinion regarding how the defendants may proceed in any such future actions during the plaintiff's confinement or the effect on the continuation or modification of compensation payments subsequent to any changes in the plaintiff's mental or physical condition.