707 So.2d 17 (1998)
Jerry D. CLARK
v.
MRS. FIELDS COOKIES.
No. 97-C-0397.
Supreme Court of Louisiana.
January 21, 1998.
James C. Cockfield, New Orleans, for Applicant.
John M. Gallagher, New Orleans, for Respondent.
MARCUS, Justice.[*]
Jerry Clark was injured in the course and scope of his employment with Mrs. Fields *18 Cookies. Hartford Insurance Company, the worker's compensation insurance carrier for his employer, voluntarily paid weekly temporary total disability payments to Clark from the date of injury, May 22, 1991, through July 12, 1993. On July 15, 1993, Hartford sent Clark a notice advising him that it was suspending all further compensation payments because he had failed to appear for an independent medical examination. When the notice was sent, Clark was incarcerated in an out-of-state prison. He was released in March, 1994.[1]
In August, 1994, thirteen months after receipt of the last compensation payment, Clark filed a claim against Mrs. Fields Cookies for wrongful termination of benefits and wrongful refusal to reinstitute benefit payments. Mrs. Fields and Hartford answered disputing Clark's entitlement to further payments. In addition, defendants filed an exception of prescription, asserting that the claim was time barred pursuant to La. R.S. 23:1209(A) because it was instituted more than one year after the last compensation payment made on July 12, 1993. The hearing officer granted the exception and dismissed plaintiff's claim. The court of appeal reversed the judgment, holding that prescription was suspended during Clark's incarceration.[2] Upon the application of Mrs. Fields Cookies and Hartford Insurance Company, we granted certiorari to review the correctness of that decision.[3]
The narrow issue presented for our review is whether incarceration suspends the running of prescription for filing a worker's compensation claim while an injured worker remains confined. For the reasons explained below, we hold that it does not.
Title 23, Chapter 10, of the Louisiana Revised Statutes sets forth a comprehensive scheme regulating the rights of employees injured in the course and scope of their employment. Part II, Subpart A, contains the general provisions regarding claims for benefits, including special rules dictating the prescriptive periods applicable to worker's compensation claims. La. R.S. 23:1209(A) provides in pertinent part:
§ 1209. Prescription; timeliness of filing; dismissal for want of prosecution
A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment (emphasis added)....
The purpose of the prescriptive periods set forth in the statute is to enable an employer to determine when his potential liability for an accident will cease, to prevent, as a matter of public policy, suits based on stale claims where evidence might be destroyed or difficult to produce, and to fix a statute of repose giving rise to a conclusive presumption of the waiver of the claim. Lunkin v. Triangle Farms, 208 La. 538, 23 So.2d 209 (1945).
In keeping with the plain wording of the statute, where, as here, compensation payments have been made and are discontinued, the one year prescriptive period runs from the date of the last payment. Young v. American Marine Corp., 458 So.2d 549 (La. App. 4th Cir.1984). Clark had one year from the date of the last payment, July 12, 1993, to file his claim; the claim filed in August of 1994 was prescribed.
Plaintiff suggests that La. R.S. 23:1201.4, which provides for the forfeiture of *19 compensation benefits while an injured employee is incarcerated, requires a different result. He argues that La. R.S. 23:1201.4 should be interpreted to prevent an injured worker from filing a claim for benefits while imprisoned and to implicitly suspend the running of prescription otherwise provided in La. R.S. 23:1209 during incarceration. We do not agree.
In Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, we reviewed settled principles of statutory interpretation. Therein we noted that the starting point in interpreting any statute is the language of the statute itself. Where part of an act is to be interpreted, it should be read in conjunction with the rest of the act. Moreover, the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. In searching for legislative intent, the legislative history of the enactment in question and contemporaneous circumstances are helpful guides. When there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the effect that makes the least change in the existing body of law. Theriot, supra. Application of these established principles of statutory construction leads us to reject the interpretation of La. R.S. 23:1201.4 advanced by plaintiff.
The statute in question provides:
§ 1201.4. Forfeiture of benefits while incarcerated
The employee's right to compensation benefits, including medical expenses is forfeited during any period of incarceration; unless a hearing officer finds that an employee has dependents who rely on a compensation award for their support, in which case said compensation shall be made payable and transmitted to the legal guardian of the minor dependent or other person designated by the hearing officer and such payments shall be considered as having been made to the employee. After release from incarceration, the employee's right to claim compensation benefits shall resume (emphasis added).
Nowhere in the statute is there any reference to suspension of prescription. Nor does the language of the statute purport to create a civil disability that would preclude the filing of a compensation claim and deny an inmate access to the courts during imprisonment. In our view, La. R.S. 23:1201.4 does not address the applicable prescriptive period or the filing of compensation claims. It only provides for the temporary forfeiture of the right to receive benefits so that inmates will not be receiving compensation checks while incarcerated.[4]
The first sentence of the statute provides that the right to compensation benefits is forfeited. It does not provide that the right to file a claim is forfeited. The last sentence of La. R.S. 23:1201.4 provides that the right to claim benefits shall resume. Read in context, this is clearly a reference to the right to resume receipt of payments already established as due. It is the right to receipt of benefits that resumes, not the right to file a claim for benefits. We find nothing in the statute that precludes an employee from filing and/or pursuing a compensation claim while incarcerated, even though each benefit payment established as due will be forfeited until the inmate's release from prison.[5] Nor *20 do we find anything in the statute that relieves the incarcerated employee from filing suit in accordance with the prescriptive periods established in La. R.S. 23:1209. In short, incarceration provides no defense to the failure to timely file a compensation claim.
We are reinforced in our interpretation of La. R.S. 23:1201.4 by our review of the legislative history of the act. In testimony before the House Committee on Labor and Industrial Relations, the purpose for enacting La. R.S. 23:1201.4 was explained as follows:
[I]f an individual is in jail and not in a position to earn wages, he should not be entitled to receive worker's compensation benefits while incarcerated.... [T]he basic premise is that if an individual is in jail, he cannot be earning wages, as worker's compensation is a partial replacement of wages that someone is not able to earn.[6]
No reference can be found in the legislative history to suggest an intent to obliquely alter the prescriptive periods clearly set forth in La. R.S. 23:1209 or to create a civil disability prevent ing the filing of claims while an injured worker is in prison.[7] Indeed, the statute provides that where a hearing officer deems it appropriate, benefit checks which would otherwise have been payable to the inmate can be transmitted to the inmate's dependents. This necessarily implies that entitlement to benefits has already been established. If an inmate were precluded from filing a claim for benefits while imprisoned, the inmate's dependents would be deprived of the chance to receive benefit checks whenever the employee was incarcerated after a work related injury but before a claim had been filed and concluded. This result is plainly adverse to the statute's manifest purpose of allowing benefits to the dependents *21 of an injured worker but not to the worker himself during a period of incarceration.
A contrary holding would be at crosspurposes with the intent of the prescriptive statute to discourage stale claims. Moreover, the interpretation of La. R.S. 23:1201.4 advanced by plaintiff would constitute a departure from accepted principles of law. No civil disability has ever been recognized in our jurisprudence that would prevent an inmate from filing and pursuing a compensation claim while incarcerated. Prior to the passage of the legislation in question, our courts had also rejected the proposition that imprisonment affects an injured worker's right to receive benefit payments.[8] La. R.S. 23:1201.4 altered the preexisting law relative to receipt of benefit payments. However, there is no indication of legislative intent to alter the law regarding the filing of claims during imprisonment or applicable prescriptive periods. We refuse to adopt an interpretation of La. R.S. 23:1201.4 that would modify established law in the absence of a clear expression of legislative intent and where the language of the statute and its legislative history suggest a contrary result.
For the reasons set forth above, we hold that if an employee has not filed a claim interrupting prescription or obtained a settlement or judgment entitling him to benefits prior to incarceration, he must file his claim within twelve months of the injury or last payment, regardless of incarceration. Plaintiff in this case did not do so; his claim is prescribed.[9]
Plaintiff argued alternatively before the hearing officer and on appeal that his suit should not have been dismissed because it related back to an earlier claim for medical benefits filed in 1992 but dismissed for failure to prosecute and because defendants had made a general appearance interrupting prescription. The court of appeal did not address these issues. We remand the matter to the court of appeal to consider plaintiff's other arguments in support of his claim that his action for compensation benefits is not prescribed.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it held that plaintiff's claim was timely filed because prescription was suspended during his period of incarceration. The matter is remanded to the court of appeal to consider whether the hearing officer erred in dismissing the plaintiff's claim for other reasons.
CALOGERO, C.J., and KNOLL, J., dissent.
JOHNSON, J., dissents.
CALOGERO, Chief Justice, dissenting.
This case involves a plaintiff who apparently sustained severe spinal injuriescompression fractures and disabling spondylolisthesiswhen he fell from a ladder while taking store inventory. In recognition of the severity of that injury, he received weekly temporary total disability payments for approximately 25 months. The reason why these benefits were terminated was his failure to attend an independent medical examination, which he was unable to attend because he was incarcerated at the time. The law tells him that during any period of incarceration his right to compensation benefits is forfeited and that his right to claim compensation benefits shall resume only after his release *22 from incarceration. Within five months of his release from prison, he filed this claim with the compensation office. Now, this Court tells him that he should have and could have filed a claim while in jail within twelve months of receipt of his last compensation payment and that this was necessary in order to preserve his claim upon his release. According to this Court, such an interpretation is necessary to protect the employer against stale claims. In my view, such a holding is neither just nor legal, for the following reasons.
My review of the legislative history and the plain wording of LSA-RS 23:1201.4 convinces me that prescription in the instant case was suspended during the period of the plaintiff's incarceration. As I read the statute, it is intended to encompass both the situation addressed by the majority, where the employee who is receiving benefits prior to incarceration forfeits that right while incarcerated only to have it resume upon his release and, additionally, the situation where it is necessary for the employee to file a claim for benefitseither because those benefits were terminated while the employee was incarcerated, as in plaintiff Clark's case, or because the employee had yet to file a claim before he was imprisoned. When payments are in fact being made and the employee is thereafter incarcerated, the suspension of prescription is not implicated because the receipt of compensation benefits is merely for feited during incarceration and is to resume upon the employee's release from prison. In such a case, there is no dispute between the employee and the employer which would impose on the plaintiff the burden of filing a claim to suspend prescription. And only if payments are not resumed upon release will it become necessary for the employee to file suit. However, prescription is implicated when it is necessary for an incarcerated employee to file a claim either to receive outset compensation benefits or to reestablish entitlement to benefits that have been terminated for a reason other than the employee's incarceration. The statute states in its last sentence, "After release from incarceration, the employee's right to claim compensation benefits shall resume." Unlike the first sentence of the statute, which speaks to forfeiture of compensation benefits while incarcerated, this last sentence addresses the right to claim benefits, for it states that this right resumes upon the employee's release. For this right to resume upon release, it must have been unavailable, or suspended, during the period of incarceration.
The legislative history of the statute supports this proposition as well. Prior to its enactment, the first two versions of the statute did not include the word "claim" in the last sentence. Instead, that sentence merely stated, "After release from incarceration, the employee's right to compensation shall resume...." The Legislature's decision to insert the word "claim" into this last sentence in the enacted version, when it had been omitted in the two previous drafts, is most instructional with respect to the statute's interpretation. In my view, this change in the enacted version of the statute is indicative of the Legislature's intent to withhold from the incarcerated employee both the right to receive and the right to make a claim for compensation benefits.
Consequently, these reasons, as well as the fundamental precept that the provisions of the Worker's Compensation Act are to be liberally construed in favor of the claimant, See Bynum v. Capital City Press, Inc. 93-1395 (La.7/2/96), 676 So.2d 582; Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96), 674 So.2d 947, support the conclusion that prescription was suspended during the plaintiff's incarceration. In my view, prescription did not commence when Clark's benefits were terminated (for his failure to attend the independent medical examination), but rather it commenced on the date of the his release from jail, because only then did his right to claim benefits resume. As the plaintiff filed this claim five months after his release from prison, his claim had not prescribed.
KNOLL, Justice, dissenting.
For the reasons assigned by Chief Justice Calogero, and for the additional reasons assigned below, I respectfully dissent.
Initially, I find that the word "forfeiture" in the statute is ambiguously used. According *23 to Blacks Law Dictionary, "forfeiture" is a "loss of some right or property as a penalty for some illegal act." However, the claimant in this case did not do anything under the Worker's Compensation Act to forfeit his benefits, nor were the benefits forfeited as a penalty because the claimant committed a criminal act. The legislature "forfeited" his benefits only during his period of incarceration not because he broke the law, but because he does not need benefits while incarcerated.
Upon a claimant's release from incarceration, his "right to claim compensation benefits shall resume." La.R.S. 23:1201.4. While the act does not specifically mention suspension of prescription, it is apparent that the legislature intended a suspension to occur. Otherwise, a claimant would have a right without a remedy, i.e., he could file a claim, but he could not collect any benefits.
Obviously, the right to file a claim for benefits that one cannot receive is a vain and useless task. Although the majority opinion holds that there is nothing in the statute to preclude an inmate from filing a compensation claim, the disadvantages of incarceration accompanied by the fact that there is no remedy to be obtained other than the interruption of prescription make filing such claims a practical impossibility.
As noted by the majority opinion, the purpose of prescriptive periods is to enable an employer to gauge potential liability, to prevent suits based on stale claims, and to establish a conclusively presumptive period for waiver of a claim. None of those purposes are served in the instant case. Here, the defendant had acquiesced that claimant was entitled to benefits, and paid TTD benefits for no less than two years. Defendant had already determined that it was liable for the claim, and had made this decision on current and conclusive evidence available at that time. By paying benefits to the claimant, defendant had made the issue of waiver of the claim moot.
The unique nature of the worker's compensation dispute as an "open ended" inquiry created a windfall for the employer in the instant case. Not only was the employer able to avoid payment of benefits to the incarcerated claimant, but the employer was able to begin anew the tolling of prescription on a claim for which it had already accepted liability. In my view, the legislature intended no such windfall to inure to the benefit of employers at the expense of the claimant, who, but for his temporary incarceration is entitled to worker's compensation benefits.
I would therefore hold that the tolling of prescription on an otherwise valid worker's compensation claim is suspended while that worker's benefits are suspended due to his incarceration. I therefore respectfully dissent from the majority opinion.
NOTES
[*] Traylor, J., not on panel. Rule IV, Part 2, § 3.
[1] There is no question that Clark received the notice. Attached to his brief to the court of appeal is a copy of a letter dated July 30, 1993, written by his counsel to the adjuster for Hartford Insurance Company, protesting the termination of benefits.
[2] 96-1120 (La.App. 4th Cir. 12/4/96), 684 So.2d 1052.
[3] 97-0397 (La.4/4/97), 692 So.2d 407. We do not reach the merits of plaintiff's claim due to our holding with respect to prescription.
[4] Prior to the passage of the statute, the only Louisiana case that had considered the question of forfeiture of benefits was Crawford v. Midwest Steel Co., Inc., 517 So.2d 918 (La.App. 3rd Cir. 1987). There, the trial judge awarded total and permanent disability benefits to an incarcerated employee but suspended the inmate's right to receive payments while imprisoned. Citing our decision in Atchison v. May, 201 La. 1003, 10 So.2d 785 (1942), he reasoned that the purpose of the social legislation was to insure that disabled employees have an income for their upkeep and maintenance during their disability. He concluded that it would be contrary to the purpose of the act to require payment of a weekly benefit to a worker who, because of his incarceration, required no upkeep and maintenance. The court of appeal reversed the order of forfeiture of benefits, noting that the authority to forfeit an injured worker's compensation benefits must be expressly provided by statute, the resolution of the issue being more appropriately left to the legislature. The enactment of La. R.S. 23:1201.4 constituted a legislative authorization of the result reached by the trial judge in Crawford.
[5] We reject plaintiff's argument that a claim filed by an incarcerated employee would be subject to an exception of prematurity. The injured employee who proves his entitlement to benefits has a current right to benefits, even though he forfeits each payment pro tanto while incarcerated. If the employee has dependents, a hearing officer may authorize the transmittal of the benefit payments made in recognition of that current right to needy dependents. Moreover, because the statute provides that the employee has a right to claim resumption of benefits upon release, it is appropriate for the inmate to go forward with his case while incarcerated in order to avoid delays in payment in the event he is still entitled to benefits upon release and to avoid difficult problems of proof that might arise in pursuing a stale claim after a long period of incarceration.
[6] See Minutes of the House Committee on Labor and Industrial Relations, May 26, 1989.
[7] House Bill 1431 originally provided in pertinent part:

The employee's right to compensation benefits, including medical expenses, is forfeited during any period of incarceration. After release from incarceration, the employee's right to compensation shall resume, with the employer receiving credit for any week the employee was incarcerated against any benefits due under R.S. 23:1221(1), (2), (3), or (4).
The digest prepared by the House Legislative Service indicated:
Proposed law provides for forfeiture of bene fits due an employee while he is incarcerated, for resumption after release and for credit to the employer of benefits forfeited by employee.
In the initial version of the statute, the provision that "the employee's right to compensation shall resume" clearly referred back to the forfeiture of "compensation benefits" mentioned in the first sentence of the proposed act.
The second version of the disputed portion of the House Bill read:
The employee's right to compensation benefits, including medical expenses, is forfeited during any period of incarceration; unless a hearing officer finds that an employee has minor dependents who rely on a compensation award for their support, in which case said compensation shall be made payable and transmitted to the legal guardian of the minor dependent or other person designated by the hearing officer. After release from incarceration, the employee's right to compensation shall resume, with the employer receiving credit for any week the employee was incarcerated against any benefits due under R.S. 23:1221(1), (2), (3), or (4).
The interposition of the clause regarding payment of benefits to dependents, while it placed some linguistic distance between the initial reference to benefits and the resumption language, did not change the meaning of the proposed act.
Moreover, the last clause in this version of the act, which gave the employer a credit for benefits due for any week the employee was incarcerated, is also instructive. Only if benefits had already been established prior to release could there be any question of granting a credit against benefits due for weeks of incarceration. The last sentence clearly addressed a resumption of benefit payments and not a restoration of the right to file an action. When the last clause of the sentence was dropped, it did not change the import of the first section of the sentence; it only removed the legislative provision mandating a credit.
[8] Thomas v. Union Tank Co., 94-778 (La.App. 3rd Cir. 12/7/94), 647 So.2d 581; Miles v. F.D. Shay Contractor, Inc., 626 So.2d 74 (La.App. 3rd Cir.1993); Crawford v. Midwest Steel Co., Inc., 517 So.2d 918 (La.App. 3rd Cir.1987); King v. McClanahan, 3 La.App. 117 (2nd Cir.1925). It is likewise well established that incarceration or institutionalization does not alone give rise to a civil disability or serve as a basis for suspension of prescription for tort claims. Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319 (La.1979); Vance v. Ellerbe, 150 La. 388, 90 So. 735 (1922); Hampton v. Kroger Co., 27,073 (La. App. 2nd Cir. 6/21/95), 658 So.2d 209; Dixon v. Roque, 503 So.2d 659 (La.App. 3rd Cir.1987); Buvens v. Buvens, 286 So.2d 144 (La.App. 3rd Cir.1973).
[9] Plaintiff also argues that the statute prevented a court from entertaining his case, and he can therefor invoke the doctrine of contra non valentem because a "legal cause" prevented him from pursuing his claim. However, having found that nothing in the statute precluded the filing of his claim, the doctrine of contra non valentem is inapplicable.